Daniel L. MARSHALL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0409–CR–778.

Court of Appeals of Indiana.

Aug. 15, 2005.

Transfer Denied Oct. 6, 2005.

Victoria Ursulskis, Marion County Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MATHIAS, Judge.

Daniel Marshall ("Marshall") was convicted in Marion Superior Court of three counts of Class A felony child molestation,[1] one count of Class B felony burglary,[2] and found to be an habitual offender.[3] Mar-shall appeals, presenting the following restated issues for review:

I.   Whether sufficient evidence supports one of his Class A felony child molestation convictions;

II.   Whether Marshall's multiple convictions violate double jeopardy principles;

III.   Whether Marshall's sentence was enhanced in accordance with *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004);

IV.   Whether the trial court abused its discretion when it ordered Marshall's Class A felony child molestation sentences to run consecutively;

V.   Whether Marshall's sentence is appropriate;

VI.   Whether Marshall's Class B felony burglary conviction was barred by the statute of limitations;  and

VII.   Whether the length of Marshall's preindictment period resulted in an unfair trial in violation of the Due Process Clause of the Fifth Amendment.

Concluding that Marshall's sentences were not enhanced in accordance with *Blakely*, the statute of limitations bars Marshall's burglary conviction, but that Marshall's consecutive sentences and remaining convictions are otherwise proper, we affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

### Facts and Procedural History

In the early morning hours of July 7, 1996, thirteen-year-old D.N. was asleep in the bedroom he shared with his younger brother. Because D.N.'s room was not air conditioned, its windows were opened for the night.

---

1.   Ind.Code § 35–42–4–3(a) (2004).

2.   Ind.Code § 35–43–2–1(1)(B) (2004).

3.   Ind.Code § 35–50–2–8 (2004).

Marshall, a stranger to D.N. and his family, climbed through D.N.'s open window, locked D.N.'s bedroom door, put a knife to D.N.'s throat, and told D.N. to be quiet or he would kill D.N. and his younger brother. Marshall then put a cover over D.N.'s head, made D.N. place his mouth on his penis, placed his mouth on D.N.'s penis, and digitally penetrated D.N.'s anus. Marshall finally attempted to sodomize D.N. During this attempt, D.N. was able to discern tattoos on Marshall's right arm.

After D.N.'s mother came home from work, she noticed a car was parked in her alley and that a patio chair was positioned alongside D.N.'s bedroom window. When D.N.'s mother and father attempted to check on D.N. and his brother, Marshall jumped up and began his retreat.

While Marshall was still in D.N.'s room, D.N. told his father not to enter because Marshall still had his knife. As Marshall began climbing out of D.N.'s window, D.N. unlocked his door and gave his father access to his room. D.N.'s father was only able to observe a shadow climbing out of D.N.'s window and was not able to apprehend or identify Marshall.

D.N. was taken to Wishard Hospital, where he was treated and examined by physicians. During this examination, D.N. told his examining physician that he had been anally penetrated, and the physicians noted that a laceration near D.N.'s anus was consistent with D.N.'s description of his ordeal. Tr. pp. 172–74. D.N. also had a laceration on his neck where Marshall held his knife.

Though no one was able to observe Marshall during his perpetration of this crime, fingerprints were lifted from D.N.'s bedroom blinds, and DNA samples were taken from D.N.'s underpants.

Initially, the police were not able to match the fingerprints taken from D.N.'s window blinds to Marshall, and the police classified D.N.'s molestation as a "cold case." At some point in September 2001, Indianapolis Police Department ("IPD") crime technicians obtained a new computer with an advanced algorithm capable of more effective fingerprint matching. When the fingerprints taken from D.N.'s room were loaded into this computer, the computer identified them as belonging to Marshall. A September 10, 2001 IPD inter-departmental communication noted that the fingerprints in question belonged to Marshall. Ex. Vol., State's Ex. 27, p. 69.

On November 27, 2001, IPD prepared a DNA profile from the sample taken from D.N.'s underpants. On July 22, 2002, IPD prepared a search warrant to obtain a sample from Marshall to compare it to the DNA profile gathered from D.N.'s underpants. This warrant was executed on August 9, 2002. In February 2003, it was determined that Marshall was the source of the DNA found in D.N.'s underpants.

On February 6, 2003, the State charged Marshall with three counts of Class A felony child molestation and one count of Class B felony burglary. Marshall was arrested on February 7, 2003. On April 16, 2003, the State alleged Marshall to be an habitual offender.

Marshall's jury trial was set for July 26, 2004. On the morning of trial, Marshall filed a motion to dismiss, alleging that the length of his preindictment was so long as to render his trial unfair in violation of Fifth Amendment Due Process. Marshall also filed a motion to dismiss his Class B felony burglary count, alleging that Indiana's statute of limitations for Class B felonies had expired by the time the State had charged him. After a hearing, the trial court denied both motions.

Marshall's trial was bifurcated, and his habitual offender determination was to be conducted in a separate proceeding from his other charges. On July 28, 2004, a jury convicted Marshall of three counts of Class A felony child molestation and Class B felony burglary.

After his initial conviction, Marshall waived his right to a jury trial for his habitual offender determination, and the trial court conducted Marshall's sentencing hearing and habitual offender determination on August 20, 2004. The trial court found Marshall to be an habitual offender based upon Marshall's November 10, 1975 first-degree burglary conviction and his July 11, 1985 burglary conviction.

During Marshall's sentencing argument, Marshall asserted his right to be sentenced consistent with *Blakely.* Tr. p. 651. The trial court found there were several aggravating circumstances, but no mitigating circumstances.

The trial court first found that, based upon Marshall's criminal history, there was a high risk he would reoffend, despite the fact that he was over fifty years old. The trial court also found Marshall's considerable criminal history as an aggravator. Marshall had eleven referrals to the juvenile justice system, a joy riding conviction, a trespassing conviction, two operating while intoxicated convictions, a failure to stop after an accident conviction, three burglary convictions, four forgery convictions, a theft conviction, and a patronizing a prostitute conviction.

The trial court also considered the nature and circumstance of Marshall's convictions as an aggravating factor, including that Marshall's crime was a "stranger molest" and Marshall had left knife marks on D.N.'s throat. The trial court considered D.N.'s age of thirteen as an aggravating factor. The trial court finally noted that each of Marshall's child molestation convictions were premised upon separate and distinguishable acts and justified consecutive sentences.

Based upon these factors, the trial court aggravated each of Marshall's Class A felony child molestation convictions by ten years and ordered each count to run consecutively. The trial court also ordered Marshall to the Department of Correction for an additional thirty years pursuant to his habitual offender determination. The trial court finally ordered Marshall to serve a ten-year concurrent sentence for his Class B felony burglary conviction. The trial court's sentences amount to a 150–year aggregate sentence. Marshall now appeals.

## I. Sufficiency of the Evidence

■ Marshall contends the evidence is insufficient to support his Class A felony child molestation conviction based upon the allegation that he digitally penetrated D.N.'s anus. Br. of Appellant at 8–14. In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and the reasonable inferences favorable to the judgment, and neither reweighing the evidence nor judging witness credibility, we conclude no reasonable fact finder could find the elements of the crime beyond a reasonable doubt. *Tyson v. State,* 766 N.E.2d 715, 717–18 (Ind.2002).

Count Two of the State's charging information alleges:

On or about July 6, 1996,[4] Daniel Marshall, did perform or submit to deviate sexual conduct, by inserting his fingers into the anus of [D.N.] with [D.N.], a child who was then under the age of fourteen (14) years, that is: thirteen (13)

4. Marshall actually committed the crimes in the early morning of July 7, 1996.

years old, while armed with a deadly weapon, that is: a knife.

Appellant's App. p. 36.

In order to obtain a conviction for Class A felony child molestation under Indiana Code section 35–42–4–3(a)(2), the State must prove beyond a reasonable doubt that the defendant (1) performed an act (2) of deviate sexual conduct (3) with a child under the age of fourteen (4) by using or threatening the use of deadly force (5) while armed with a deadly weapon. Ind. Code § 35–42–4–3(a)(2) (2004); *Krebs v. State*, 816 N.E.2d 469, 472 (Ind.Ct.App. 2004). Deviate sexual conduct is defined as (1) the use of a sex organ of one person and the mouth or the anus of another person or (2) the penetration of the sex organ or anus of a person by an object. Ind.Code § 35–41–1–9 (2004); *Krebs*, 816 N.E.2d at 472.

Marshall claims the evidence is insufficient because D.N.'s testimony concerning anal penetration was equivocal and the State failed to present exhibits or medical evidence indicating D.N. was anally penetrated. Neither of Marshall's assertions is correct.

Marshall claims D.N.'s testimony concerning penetration is equivocal because D.N. used the word "rear" to describe where he was touched rather than the word "anus." Br. of Appellant at 10. Marshall contends that rear denotes the touching of D.N.'s buttocks rather than anus. *Id.* at 10–11.

D.N.'s testimony stated in part:

STATE: What is the next thing you felt happen to you?

D.N.: He placed his finger *in* my rear.

   *    *    *    *    *    *

STATE: How do you know that it was his finger that he put *into* your rear?

D.N.: About the only thing I could think it was.

Tr. p. 266 (emphasis added).

Had D.N. used the preposition "on" rather than "in," Marshall's assertion that D.N.'s testimony was equivocal might have merit. However, the use of "in" can only denote anus. Furthermore, Marshall is likely aware of the significance of D.N.'s use of the preposition "in" as Marshall's statement of facts mischaracterizes the record by noting that the perpetrator placed his hand "*on* D.N.'s rear." Br. of Appellant at 5 (emphasis added). D.N.'s use of "in" created a reasonable inference indicating that D.N. was referring to his anus rather than buttock and supports the jury's determination of guilt.

Marshall also supports his assertion by noting "[D.N.], a 21–year–old adult [by the time of trial] who should have had ample knowledge about body parts and their correct names, could not even give the most basic description with simple, but properly descriptive words." Br. of Appellant at 10. Marshall's assertion is both crass and inaccurate, as it is more than understandable why a person of any age would have difficulty describing the incident D.N. was subjected to by Marshall.

Marshall also states, "The sole direct evidence concerning this particular act of deviate sexual conduct was the testimony of the complaining witness. The State had no tangible exhibits or medical evidence corroborative of the physical act alleged [.]" Br. of Appellant at 9. This is a gross mischaracterization of the record.

D.N. was examined at Wishard Hospital. During this examination, D.N. told his examining physician that he had been anally penetrated. Tr. pp. 172–74. D.N.'s treating physician indicated that the lacerations near D.N.'s anus were consistent with D.N.'s recitation of his assault. Tr. p. 173.

This evidence constitutes substantial medical corroboration of D.N.'s testimony.

D.N.'s use of the word "in" rather than "on" and the testimony of D.N.'s treating physician adequately support Marshall's second child molestation conviction.

## II. Double Jeopardy

■ Marshall claims his three Class A felony child molestation convictions constitute a single act and violate double jeopardy principles because they were all committed using the same knife under the same threat. Br. of Appellant at 16–19.

*Miller v. State*, 790 N.E.2d 437 (Ind. 2003), is directly on point with Marshall's assertion. In *Miller*, Miller claimed a double jeopardy violation because there were multiple enhancements based upon the use of a single knife. *Id.* at 438. Our supreme court rejected Miller's double jeopardy claim because each of Miller's convictions were supported by proof of at least one unique evidentiary fact and the use of a single deadly weapon during the commission of a separate offense may enhance the level of each offense. *Id.* at 439.

Marshall claims *Miller* is distinguishable because Justice Sullivan, in his concurring opinion, noted:

> What justifies the multiple enhancements here is the repeated use of the knife by the defendant in committing crimes for which he was convicted. Had the defendant merely been armed with the weapon while committing multiple crimes, and not actually used it, I think it would be improper to impose more than one enhancement.

Br. of Appellant at 18 (citing *Miller*, 790 N.E.2d at 439 (J. Sullivan, concurring)).

There are two problems with Marshall's assertion. First, the four other justices of our supreme court did not join Justice Sullivan's assertion, and we are bound to follow the majority of our supreme court.

Second, Marshall's independent acts constitute proper convictions even under Justice Sullivan's reasoning, as Marshall used the knife in each of his acts supporting his convictions. Although Marshall only held his knife to D.N.'s throat once, it is not as if Marshall needed to remind D.N. of the knife's presence as he used the threat of the knife to facilitate each independent molestation.

Marshall's multiple convictions do not violate double jeopardy principles.

## III. *Blakely*

■ Pursuant to *Blakely v. Washington*, when a trial court enhances a defendant's sentence beyond the fixed standard term provided by our code, the aggravating circumstances identified for that enhancement must be either proven beyond a reasonable doubt to a jury, admitted by the defendant, or represent prior criminal convictions. *Smylie v. State*, 823 N.E.2d 679, 682–83 (Ind.2005). During Marshall's sentencing hearing, Marshall's attorney properly objected to the trial court's use of non-*Blakely* approved aggravators and preserved Marshall's *Blakely* claim for appeal. Tr. p. 651.

■ In aggravating Marshall's sentence, the trial court first found that, based upon Marshall's criminal history, there was a high risk he would reoffend, despite the fact that he was over fifty years old. The trial court also noted Marshall's considerable criminal history to be an aggravator. The trial court finally considered the nature and circumstance of Marshall's crime as an aggravating factor, including the fact that Marshall's crime was a "stranger molest," Marshall had left knife marks on D.N.'s throat, and D.N.'s age of thirteen.

■ Though the trial court's use of Marshall's criminal history was proper un-

der *Blakely*,[5] the various acts that constitute the nature and circumstance of Marshall's crime were not. Where the use of some sentencing aggravators violates *Blakely* and the use of others does not, the question becomes whether we can say that the trial court's reliance on improper aggravators was harmless beyond a reasonable doubt because it would have imposed the same sentence based solely on proper aggravators. *Simmons v. State*, 828 N.E.2d 449, 457 (Ind.Ct.App.2005) (citing *Holden v. State*, 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004), *trans. denied* ).

Though it is certain that the trial court would have imposed an enhanced sentence had it not relied upon the improper sentencing aggravators, it is logically impossible to assert that the trial court would have imposed the same sentence had it not relied upon the improper aggravators. By definition, an aggravator enhances a sentence. Accordingly, because the trial court did not impose the maximum sentence, it is logically inescapable that the trial court's improper aggravators represent at least some portion of Marshall's aggravated sentence. Because Marshall received a harsher sentence based upon improper aggravating factors, *Blakely* requires us to vacate Marshall's three ten-year enhancements.

■ Marshall also claims *Blakely* requires this court to vacate the trial court's decision to order his sentences to be served consecutively. However, *Blakely* does not apply to a decision to run sentences consecutively. *Smylie*, 823 N.E.2d at 686. Accordingly, we only vacate the trial court's three, ten-year enhancements of Marshall's sentence, reducing Marshall's consecutive sentences to an aggregate term of 120 years.

## IV.  Abuse of Discretion

Marshall challenges the trial court's finding of sentencing aggravators used to enhance his sentence and used to order his sentences to run consecutively. Br. of Appellant at 20–22. Because we have already vacated the enhancement of Marshall's sentences, we only review Marshall's claim pursuant to the decision to order Marshall's sentences to run consecutively.

■ Sentencing decisions are generally within the discretion of the trial court and will only be reversed upon a showing of an abuse of discretion. *Jones v. State*, 698 N.E.2d 289, 290 (Ind.1998). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *State v. Willits*, 773 N.E.2d 808, 811 (Ind.2002).

■ In order to impose consecutive sentences, a trial court must find at least one aggravating circumstance. *Ortiz v. State*, 766 N.E.2d 370, 377 (Ind.2002). If a trial court imposes consecutive sentences, when not required to do so by statute, this court will examine the record to insure that the trial court adequately explained its reasons for selecting the sentence imposed. *Id.*

■ A review of the record indicates that the trial court improperly relied upon D.N.'s age to enhance Marshall's sentence because D.N.'s age is a material element of Marshall's crime of Class A felony child molesting. *See Townsend v. State*, 498 N.E.2d 1198, 1201 (Ind.1986) (the mere fact that comprises a material element of the offense may not also constitute an

---

**5.** Because Marshall's juvenile history was not the result of a jury finding of guilt beyond a reasonable doubt, it is doubtful that his juvenile history is a *Blakely*-permissible aggravator. *But see Ryle v. State*, 819 N.E.2d 119, 123 (Ind.Ct.App.2004), *trans. granted.*

aggravating circumstance to support the enhanced sentence).

However, the rest of the factors the trial court used to order Marshall's sentences to run consecutively were proper. Although the use of a deadly weapon is an element of Marshall's convicted offense, Marshall held the knife against D.N.'s throat and left a laceration. A fact that merely constitutes an element of the offense may not be used to enhance a sentence; however, particularized individual circumstances may constitute a separate aggravating circumstance. *Townsend*, 498 N.E.2d at 1201. Marshall's holding of his knife against D.N.'s throat, thereby leaving a laceration, was not a mere fact constituting an element but was a particularized individual circumstance within the trial court's discretion to consider as an aggravator.

Furthermore, in ordering Marshall's sentences to run consecutively, the trial court placed emphasis on its determination that each of Marshall's Class A felony child molestation convictions constituted separate distinguishable incidents. Tr. p. 657.

An error involving an abuse of discretion does not require reversal unless it affects the substantial rights of a party or is inconsistent with substantial justice. *Carpenter v. State*, 786 N.E.2d 696, 704 (Ind.2003); Ind. Trial Rule 61 (2005). The lone erroneous aggravating factor discussed above is harmless, as it is only a minor aggravating factor in the midst of several proper and substantial aggravating factors—including Marshall's considerable criminal history and the fact that each of Marshall's Class A felony convictions constituted a separate and distinguishable act. Accordingly, the trial court was within its discretion when it ordered Marshall's Class A felony child molestation sentences to run consecutively.[6]

## V. The Inappropriate Sentencing Standard

Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B) (2005); *Asher v. State*, 790 N.E.2d 567, 570 (Ind.Ct.App. 2003). Marshall claims his sentence is inappropriate.

The trial court's oral sentencing order stated in part:

> This Court notes that recently many of the decisions that are coming out of the Court of Appeals and the Supreme Court have indicated that large sentences should only be given out in the worst cases. . . . However, having said that, this Court truly believes—and believes that the jury found that—this truly [was] one of the worst of the worst.

Tr. p. 659.

Sadly, we agree. In terms of the nature of the offense, Marshall subjected D.N. to repeated sexual assaults, held a knife to

---

6. One may ask why the *Blakely* error requires reversal while the improper aggravator discussed under the abuse of discretion standard does not. Unlike the *Blakely* error, the single aggravating factor of D.N.'s age is a minor factor in the presence of several substantial aggravating factors. Also, a *Blakely* error is subject to the federal harmless error test; reliance on an improper common law or statutory aggravator is not. Finally, it is logically impossible to assert that the improper *Blakely* aggravating factors did not represent some portion of Marshall's sentence; it is possible and probable that the omission of the single improper aggravator would not have altered the decision to run Marshall's sentences consecutively.

D.N.'s throat leaving a laceration, threatened to kill D.N. and his younger brother, and attempted to rape D.N. In terms of Marshall's character, his criminal history includes at least fourteen adult convictions and three burglaries. Furthermore, the trial court did not impose the maximum sentence. Marshall was subject to a 200–year sentence had the trial court ordered all of Marshall's convictions to run consecutively and given Marshall the maximum sentence for each conviction.

The trial court was correct in determining that Marshall was one of the "worst of the worst" and deserving of a substantially aggravated sentence.

### VI. Statute of Limitations

■■■ Marshall claims the trial court misapplied the statute of limitations when it allowed the State to convict him of Class B felony burglary. Br. of Appellant at 23–27. Our standard of review for the interpretation of a statute is de novo. *Theobald v. Theobald*, 804 N.E.2d 284, 285 (Ind. Ct.App.2004). We review legal determinations to ascertain whether the trial court erred in its application of the law. *Id.* at 285–86.

Indiana Code section 35–41–4–2 states in part:

(a) Except as otherwise provided in this section, a prosecution for an offense is barred unless it is commenced:

  (1) within five (5) years after the commission of the offense, in the case of a Class B . . . felony.

(b) A prosecution for a Class B . . . felony that would otherwise be barred under this section may be commenced within one (1) year after the earlier of the date on which the state:

  (1) *first discovers* the identity of the offender with DNA . . . evidence; or

  (2) *could. have discovered* the identity of the offender with DNA . . . evidence by the exercise of due diligence.

Ind.Code § 35–41–4–2 (2003) (emphasis added).

Absent a DNA extension as provided in Indiana Code section 35–41–4–2(b), the statute of limitations for Marshall's Class B felony burglary conviction would have expired on July 7, 2001. The State claims the DNA extension is applicable in this case because, though fingerprint evidence made the State aware of Marshall's identity on September 10, 2001, the State could not "establish" Marshall's identity as the burglar until it obtained the final DNA test results. Br. of Appellant at 16.

■■■ However, the statutory language of the DNA exception of section 35–41–4–2(b) does not extend the statute of limitations when DNA is able to "establish" the identity of the defendant, but rather when the State, though use of DNA evidence, "discovers" or "could have discovered" the identity of the defendant. Ind.Code § 35–41–4–2(b). To emphasize this distinction, a separate exception to Indiana's statute of limitations clearly indicates it may be tolled until the State may establish the defendant committed the offense. Indiana Code section 35–41–4–2(h)(2) states in part:

[If] the accused person conceals evidence of the offense, *and evidence sufficient to charge him with that offense* is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence.

Ind.Code § 35–41–4–2(h)(2) (emphasis added).

. The State became aware of Marshall's identity when it obtained a match for his fingerprints on September 10, 2001. Un-

fortunately, in order for the DNA exception of Indiana Code section 35–41–4–2(b) to be applicable in light of the State's pre-DNA discovery of Marshall's identity, section 35–41–4–2(b) would have to be worded similarly to Indiana Code section 35–41–4–2(h) and omit the "discovery" trigger.[7] *See Thakkar v. State,* 613 N.E.2d 453, 457 (Ind.Ct.App.1993) (Any exception to the statute of limitations must be construed narrowly and in a light most favorable to the accused). Accordingly, we are forced to reverse Marshall's burglary conviction.

## VII. Due Process

■■■ Marshall claims that the length of time between the commission of his offense and his indictment was excessively long in violation of the Due Process Clause of the Fifth Amendment. Br. of Appellant at 28. Marshall supports this assertion by claiming that the delay precluded him from calling alibi witnesses who could recall him being at work that day, and he could not use his girlfriend as an alibi witness, as she had died during his preindictment period. *Id.*

■■■ The Due Process Clause of the Fifth Amendment protects defendants against excessive preindictment delay. *U.S. v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In order to obtain relief from an allegation of preindictment delay, the defendant has the burden to make a threshold showing that he suffered actual and substantial prejudice to his right to a fair trial. *U.S. v. Sowa,* 34 F.3d 447, 450 (7th Cir.1994). The defendant must also establish that the State delayed the indictment to gain a tactical advantage or for some other impermissible reason. *Id.*

Marshall has failed to establish his right to due process relief. Marshall's manager testified that the *earliest possible* time he could have arrived at work was 7:30 a.m., and Marshall's crime had been completed by 7:30 a.m. Tr. pp. 81–82, 120, 536. Also, Marshall's appellate assertion that his dead girlfriend could have established an alibi is no more than unsupported speculation. Finally, as asserted by the State, any of Marshall's purported alibi witnesses would have had a difficult time explaining how Marshall's DNA evidence was found in D.N.'s underpants. Br. of Appellee at 21.

Moreover, there is no evidence that the State sought to delay Marshall's trial. *Allen v. State,* 813 N.E.2d 349, 368 (Ind.Ct.App.2004), *trans. denied* ("It is proper for a prosecutor to delay filing charges until he is completely satisfied that he should prosecute and will be able promptly to

---

7. It is tempting to apply the above-quoted exception listed under Indiana Code section 35–41–4–2(h) to the horrific facts of this case, as Marshall concealed the evidence of his identity by pulling blankets over D.N.'s head. However, in order for this exception to apply, a defendant must affirmatively conceal the fact *that an offense has been committed. Kifer v. State,* 740 N.E.2d 586, 588 (Ind.Ct.App. 2000). *Kifer's* interpretation of this exception is somewhat troubling because it took this proposition from cases citing to Indiana's prior statute of limitations, *which specifically required the defendant to have hidden the fact that an offense had been committed. See* Ind. Code § 35–1–3–5 (1979); *State v. Holmes,* 181 Ind.App. 634, 637, 393 N.E.2d 242, 244 (1979); *Kifer,* 740 N.E.2d at 587–89. Indiana's current statute of limitations has abandoned the now defunct Indiana Code section 35–1–3–5's use of "conceals the fact that the offense has been committed" language and has substituted the considerably broader "conceals evidence of the offense." *See* Ind.Code § 35–41–4–2. *Kifer's* apparent reason for not assigning significance to the changed language is that such language would create a hardship for defendants because it would tend to allow the prosecution of virtually every offense beyond the statute of limitations period. *Kifer,* 740 N.E.2d at 588–89; *see also Umfleet v. State,* 556 N.E.2d 339, 341 (Ind.Ct.App.1990).

establish guilt beyond a reasonable doubt."). Accordingly, Marshall's due process claim fails.

## Conclusion

The three, ten-year enhancements of Marshall's sentences violate *Blakely* and must be reversed. Marshall's Class B felony burglary conviction was obtained in violation of the statute of limitations and must also be reversed. However, Marshall's three Class A felony child molestation convictions, habitual offender determination, and his consecutive sentences are affirmed. The State has the option of seeking resentencing of Marshall on remand or accepting Marshall's current 120–year aggregate sentence.

Affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

DARDEN, J., and CRONE, J., concur.