Anna WESTLAKE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A04–0803–CR–138.

Court of Appeals of Indiana.

Sept. 23, 2008.

Jason W. Bennett, Bennett Boehning & Clary LLP, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Anna Westlake ("Westlake") pleaded guilty in Tippecanoe Superior Court to Class B felony dealing in cocaine and Class C felony neglect of a dependent. The trial court ordered Westlake to serve an aggregate sentence of fourteen years in the Department of Correction. Westlake raises one issue on appeal: whether her fourteen-year sentence is appropriate.

We reverse and remand.

### Facts and Procedural History

On August 16, 2006, the Tippecanoe County Drug Task Force ("DTF") were maintaining surveillance on Westlake's home and saw a vehicle leave. The DTF stopped the vehicle and found a baggie of cocaine that belonged to the passenger. The passenger had purchased the cocaine from Westlake and had purchased cocaine from her on previous occasions.

Based on this information, the DTF obtained a search warrant for Westlake's home. However, before executing the warrant, the DTF noticed that Westlake had left her house and met another person at a laundromat. The police approached the vehicle and after noting items commonly used for smoking crack in plain view in the back seat, searched the vehicle.

The search of the vehicle turned up a small amount of marijuana, several baggies of rock and powder cocaine, and a bag of drug paraphernalia. Westlake was arrested. While in custody, Westlake told police she had been dealing for several months, and when told of the impending search warrant for her home, she volunteered to show police where drugs were hidden.

The search of Westlake's home on August 17, 2006, revealed more than fifty grams of cocaine, more than forty grams of marijuana, various prescription pills, and drug paraphernalia. At the time of the search, Westlake's six-year old son lived in the home.

As a result of the search, the DTF arrested a man who was living with Westlake for manufacturing methamphetamine. Child Protective Services ("CPS") removed her son from the home and subsequent hair follicle tests of the child showed the presence of cocaine and methamphetamine. Westlake herself also tested positive for methamphetamine.

On January 12, 2007, the State charged Westlake with two counts of Class A felony dealing in cocaine, Class A felony possession of cocaine, Class D felony possession of marijuana, and two counts of Class C felony neglect of a dependent. On January 19, 2007, the State added two more counts of Class A felony dealing in cocaine.

On July 13, 2007, Westlake pleaded guilty to Class B felony dealing in cocaine and Class C felony neglect of a dependent. Under the plea agreement, the remaining counts would be dismissed and sentencing would be left open. The trial court took the guilty plea under advisement, placed Westlake in a pre-conviction release program pending sentencing, and ordered that she obtain psychiatric and substance abuse evaluations.

While awaiting sentencing, a CHINS case involving her children proceeded. Prior to the sentencing hearing, Westlake had visitation with her children at least every other weekend. The CHINS case was eventually dismissed.

As a result of the evaluations ordered at the guilty plea hearing, Westlake was diagnosed and treated for bipolar disorder, a serious mental illness that had previously been undiagnosed and untreated. While in the pre-conviction release program, Westlake obtained full-time employment, participated in an outpatient drug treatment program, attended daily Narcotics Anonymous meetings, and enrolled in parenting classes. During this time, Westlake lost part of her right thumb in a work-related accident. She received prescribed narcotic painkillers, discontinued use of them after two weeks, and reentered the drug treatment program. Not surprisingly, her pre-sentence report found that Westlake is in the low risk offender group that is suitable for halfway house placement, minimum security, and/or parole.

On December 20, 2007, the trial court accepted the plea agreement, found Westlake guilty but mentally ill, and sentenced her to an executed ten-year sentence for the Class B felony dealing in cocaine and four years for the Class C neglect of a dependent with three years suspended to community corrections and one year suspended to unsupervised probation. The trial court found five mitigating circumstances: Westlake's intelligence, education, work history, incarceration causing undue hardship on her children, and her bipolar disorder; and two aggravating circumstances: criminal history and the extent of her drug dealing. The trial court found that these factors were in balance but imposed consecutive sentences because of the serious substance abuse and the extent of her drug dealing.

Westlake appeals.

### Discussion and Decision

■ Westlake argues her fourteen-year sentence is inappropriate. Appellate courts have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, the court concludes the sentence is inappropriate in light of the nature of the offense and character of the offender. Ind. Appellate Rule 7(B) (2008); *Marshall v. State*, 832 N.E.2d 615, 624 (Ind.Ct.App.2005), *trans. denied*. "[A] defendant must persuade the appellate court that his or her sentence has met the inappropriateness standard of review." *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.2007).

Considering the nature of the offenses, Westlake pleaded guilty to Class B felony dealing in cocaine and Class C felony neglect of a dependent. The range of sentences for a Class B felony is from six to twenty years with a fine of not more than $10,000. The range of sentences for the Class C felony is from two to eight years with a fine of not more than $10,000. Westlake had been dealing cocaine, marijuana, and other prescription drugs for nearly one year. Through Westlake's immediate cooperation, police found more than an ounce of cocaine, more than an ounce of marijuana, various prescription medications, and other drug paraphernalia in Westlake's home. Hair follicle tests showed that her six-year old son had been exposed to cocaine and methamphetamine. The trial court determined that her level of involvement in drug dealing was an aggravator. However, no aggravators were deemed to attach to the neglect of a dependent charge.

Westlake's demonstrated character is crucial to our review and to our conclusion that Westlake's sentence is inappropriate. When police confronted her, she immediately assisted them in locating all of the drugs in her home. After she pleaded guilty, the trial court placed Westlake in its excellent pre-conviction release program. While in this program, Westlake was diagnosed with bipolar disorder [1] and received treatment and medication. With her newfound psychiatric stability, she was incredibly successful in the pre-conviction release program. In addition, Westlake cooperated with the CPS to such a degree that the CHINS case was dismissed. She was granted liberal visitation with her children and would have had the children returned to her care, if not for the possibility of jail time. Appellant's App. p. 17.

In her pre-sentence report, Westlake was determined to be in the low risk offender group suitable for placement in a halfway house, minimum security, and/or parole. While the instant offenses are serious, her criminal history is relatively minor, in that it consists of three misdemeanors. Extremely significant is the trial court's decision to find Westlake guilty but mentally ill. The trial court's further recognition of her need for continued treatment and the effect that the diagnosis and treatment of her bipolar disorder have had on her personal life are also quite important.[2]

Under these extremely unusual facts and circumstances, we conclude that Westlake's sentence is inappropriate. Although her offenses were serious, they were not a continuation of a related criminal history and her character is unusually and extraordinarily mitigating. The combination of Westlake's previously undiagnosed bipolar disorder, her comprehensive response to treatment, and resulting stellar success in Tippecanoe County's excellent pre-conviction program lead us to the conclusion that her sentence is inappropriate.

For all these reasons, we remand this case to the trial court with instructions that it vacate Westlake's sentence and impose a sentence of seven years imprisonment for Class B felony dealing in cocaine and a concurrent three-year term for Class C felony neglect of a dependent for an aggregate term of seven years imprisonment. Two years of this sentence are

---

1. "Bipolar disorder, also known as manic-depressive illness, is a brain disorder that causes unusual shifts in a person's mood, energy, and ability to function." http://www.nimh.nih.gov/heal th/publications/bipolar-disorder/complete-publication.shtml

2. *See Biehl v. State,* 738 N.E.2d 337 (Ind.Ct. App.2000) (holding that a severe and long-standing mental illness is a mitigating factor to be given some weight)

suspended, one to supervised probation and one to unsupervised probation with credit for time already served, and the executed portion of the sentence is to be served in the Tippecanoe County Community Corrections program.

Reversed and remanded.

BAKER, C.J., concurs.

BROWN, J., dissents with opinion.

BROWN, Judge dissenting.

I respectfully dissent from the majority's revision of Westlake's sentence. Westlake argues that her sentence is inappropriate in light of the nature of the offense and the character of the offender under Ind. Appellate Rule 7(B), and the majority holds that the sentence imposed by the trial court is inappropriate based upon her character. I conclude that the trial court's sentence is not inappropriate.

While I acknowledge Westlake's mental illness, progress in treatment, and success in the pre-conviction release program, I conclude that the majority's significant reduction in her sentence fails to give due consideration to the trial court's decision. The trial court's sentencing order indicates that it found Westlake's criminal history, serious substance abuse problem, and the fact that she was "deeply involved in dealing cocaine" as aggravators. Appellant's App. p. 82. The trial court found undue hardship on her children, her education, and her bipolar disorder as mitigators.

The record reveals that the State charged Westlake with four counts of dealing in cocaine as class A felonies, one count of possession of cocaine as a class A felony, one count of possession of marijuana as a class D felony, and two counts of neglect of a dependent as class C felonies. Westlake pled guilty to an amended charge of dealing in cocaine as a class B felony and one count of neglect of a dependent as a class C felony. In exchange for the guilty plea, the State dismissed the other charges. Westlake has two prior convictions for operating a vehicle while intoxicated as class A misdemeanors and a conviction for leaving the scene of an accident as a class B misdemeanor. She was on probation at the time of the instant offenses. The PSI indicates that Westlake began using drugs and alcohol at the age of twelve, and she was heavily involved with methamphetamine at the time of her arrest. Westlake was dealing cocaine at the time that her two children lived with her, and her six-year-old son's hair sample tested positive for cocaine and methamphetamine. Westlake is an educated woman and a former physician recruiter.

The majority places significant emphasis on Westlake's mental illness and progress during her pre-conviction release program. The Indiana Supreme Court has held that a guilty but mentally ill defendant "is not automatically entitled to any particular credit or deduction from his otherwise aggravated sentence" simply by virtue of being mentally ill. *Weeks v. State*, 697 N.E.2d 28, 30 (Ind.1998) (relying on Ind. Code § 35–36–2–5(a), which provides that a defendant found to be guilty but mentally ill is to be sentenced "in the same manner as a defendant found guilty of the offense"). In sentencing a guilty but mentally ill defendant " 'in the same manner' as any other guilty defendant, trial courts should at a minimum carefully consider on the record what mitigating weight, if any, to accord to any evidence of mental illness, even though there is no obligation to give the evidence the same weight the defendant does." *Id.* Several factors bear on the weight, if any, that should be given to mental illness in sentencing. *Id.* These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2)

overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Id.*

Although Westlake was diagnosed and treated for bipolar disorder during her pre-conviction release program, there was no evidence presented at sentencing regarding any of the *Weeks* factors. While the trial court considered Westlake's mental illness and progress, it legitimately placed more emphasis on Westlake's serious substance abuse and drug dealing. Transcript at 33 ("[W]hat tips me over is the serious substance abuse and the extent of her drug dealing."). After considering Westlake's criminal history, the extent of her substance abuse problem and drug dealing, her education, undue hardship on her children resulting from her incarceration, and her bipolar disorder, the trial court imposed consecutive advisory sentences.

I cannot agree with the majority's significant reduction to almost minimum, concurrent sentences with two years suspended and the executed portion of Westlake's sentence served in community corrections. Rather, I believe that the trial court took Westlake's mental illness, progress in treatment, and success in the pre-conviction release program into account by imposing the advisory sentences. At most, I could recommend concurrent rather than consecutive sentences for her offenses.

After due consideration of the trial court's decision, I cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. I would affirm Westlake's sentence or, at most, order concurrent rather than consecutive sentences. Consequently, I dissent from the majority's significant reduction of her sentence.