**STATE of Indiana, Appellant,**

v.

**Roger LINDSAY, Appellee–Defendant.**

No. 11A01–0602–CR–61.

Court of Appeals of Indiana.

March 9, 2007.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Scott E. Racop, Racop Law Offices, P.C., Terre Haute, IN, Attorney for Appellee.

**OPINION**

SULLIVAN, Judge.

The State of Indiana appeals the trial court's dismissal of a charge of Corrupt

Business Influence, a Class C felony,[1] as alleged in an indictment against Appellee, Roger Lindsay.[2]

We affirm.

Lindsay is a former police officer of the Brazil (Indiana) Police Department. He left the department in 1990 and moved away from Clay County. Prior to leaving the Brazil Police Department, Lindsay investigated a double homicide which occurred in 1988, and at the time of his departure in 1990, the case remained unsolved and was subsequently deemed a "cold case" file. Appendix at 14. In 2003, the Indiana State Police cold case team began re-investigating the 1988 murders and contacted Lindsay for assistance with their investigation. At the request of the cold case team, Lindsay, who had moved to Florida in 1996,[3] voluntarily returned to Indiana on July 28 and 29, 2003, reviewed evidence, and answered questions regarding his investigation of the 1988 double homicide before returning to Florida.

During the course of the cold case team's investigation, three witnesses, who had apparently provided statements during the original investigation, recanted their prior statements to the cold case detectives. Although initially Lindsay was not a suspect in the investigation, the cold case team shifted its focus to Lindsay after receiving information concerning Lindsay's conduct during the original investigation of the 1988 murders. Specifically, cold case detectives learned that witnesses' earlier statements during the original investigation of the 1988 murders may have been procured by Lindsay's threats and acts of intimidation. One witness claimed that Lindsay threatened to have her children removed from her care if she did not give false statements to police. This same witness also claimed that Lindsay threatened her with jail time and a stun gun if she did not cooperate with him. A second witness claimed that Lindsay manipulated him into leaving the State by telling him that a "hit" had been placed on him. Transcript at 22. A third witness claimed that Lindsay told her she would be arrested if she provided information of his conduct to the authorities. This witness further claimed that Lindsay told her there was a dead body in a cave in Center Point, Indiana, information which she perceived as a threat to her. A fourth individual claimed that Lindsay threatened her with jail time if she did not have sexual intercourse with him.

After receiving the above information, in November 2004 the cold case team contacted Lindsay and asked him to again return to Indiana to assist with the investigation of the 1988 murders. Lindsay voluntarily returned to Indiana and during an interview with cold case detectives discussed various aspects of his investigation of the 1988 double homicide. During the interview, the Indiana State Police served a subpoena upon Lindsay to appear at a grand jury proceeding of which Lindsay was a target. Specifically, the grand jury investigation concerned alleged crimes of corrupt business influence, obstruction of justice, intimidation, false informing, official misconduct, and murder. Lindsay successfully moved to quash the subpoena.

---

1. Ind.Code § 35–45–6–2 (Burns Code Ed. Repl.2004).

2. Pursuant to Indiana Code § 35–38–4–2 (Burns Code Ed. Repl.1998), the State is permitted to appeal from an order granting a motion to dismiss an indictment.

3. Lindsay is employed as a federal police officer in the State of Florida, working for the Department of Veterans Affairs.

On December 9, 2004, the grand jury returned an indictment charging Lindsay with one count of corrupt business influence (commonly known and hereinafter referred to as "RICO"), as a Class C felony, and two counts of false informing as Class A misdemeanors. On November 4, 2005, Lindsay filed a motion to dismiss the indictment, claiming, among other things, a violation of the five-year statute of limitation[4] for the Class C felony charge.[5] On December 2, 2005, the trial court conducted a hearing on Lindsay's motion. The trial court subsequently issued an order concluding that the Class C felony charge did not survive the statute of limitation; the trial court therefore dismissed that charge.[6]

 Upon appeal, the State argues that the trial court erred when it granted Lindsay's motion to dismiss the RICO charge. We review a trial court's grant of a motion to dismiss a criminal charge for an abuse of discretion. *See State v. Isaacs*, 794 N.E.2d 1120, 1122 (Ind.Ct.App. 2003). We will reverse a trial court's decision for an abuse of discretion where the court's decision is clearly against the logic and effect of the facts and circumstances. *Id.*

 A statute of limitation is designed to insure against prejudice and injustice to a defendant which is occasioned by a delay in prosecution. *State v. Jones*, 783 N.E.2d 784, 786–87 (Ind.Ct.App.2003). The limitation period seeks to strike a balance between a defendant's interest in

being placed on notice so as to be able to formulate a defense for a crime charged and the State's interest in having sufficient time to investigate and develop a case. *Id.* at 787. Any exception to the limitation period must be construed narrowly and in a light most favorable to the accused. *Id.* It is the State's burden to prove that the crime charged was committed within the statute of limitation. *Sipe v. State*, 797 N.E.2d 336, 339 (Ind.Ct.App.2003).

The State first argues that given the ongoing nature of a RICO offense, the Class C-felony RICO charge was filed within the applicable statute of limitation. The statute of limitation at issue in the present case is Indiana Code § 35–41–4–2(a)(1) (Burns Code Ed. Supp.2006), which provides that a prosecution for a Class C-felony offense is barred unless it is commenced within five years after the commission of the offense. The RICO offense for which Lindsay was charged is defined as follows:

> "A person ... who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity ... commits corrupt business influence...." Ind.Code § 35–45–6–2 (Burns Code Ed. Rep. 2004).

The term "pattern of racketeering activity" is defined as:

> "engaging in at least two (2) incidents of racketeering activity that have the same

---

**4.** In a criminal proceeding a defendant may challenge, through a motion to dismiss, whether the prosecution has been timely brought. *See* Ind.Code § 35–34–1–4(a)(8) (Burns Code Ed. Repl.1998).

**5.** *See* Ind.Code § 35–41–4–2(a)(1) (Burns Code Ed. Supp.2006).

**6.** Lindsay also requested dismissal of the false informing misdemeanor charges, arguing that those charges were untimely filed as well. The trial court concluded, however, that the false informing charges were filed within the statute of limitation applicable to misdemeanor offenses. Upon appeal, Lindsay does not cross-appeal challenging the court's order in this regard.

or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. However, the incidents are a pattern of racketeering activity only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity." Ind.Code § 35–45–6–1 (Burns Code Ed. Supp.2006).

"Racketeering activity" means to commit or attempt to commit any of the statutorily listed crimes, including official misconduct, perjury, obstruction of justice, or intimidation. I.C. § 35–45–6–1.

The State argues that a pattern of racketeering activity continues for purposes of RICO so long as the last incident of racketeering activity is within five years of the previous racketeering activity. The State further asserts that the statute of limitation does not begin to run until the last activity of racketeering occurs. Here, Count 1 of the indictment alleges that between 1977 and 2004, Lindsay "conducted or participated in the activities of the enterprise through a pattern of racketeering activity, to-wit: committed or conspired to commit fifteen (15) offenses of official misconduct, intimidation, obstruction of justice, dealing marijuana or perjury. . . ." Appendix at 7.

At both the motion to dismiss hearing and upon appeal, the State maintains that the grand jury found that Lindsay's alleged false reporting in 2003 and 2004 [7] were acts constituting the racketeering activity of official misconduct and were part of the same pattern of racketeering activity for the RICO offense which was alleged to have begun in 1977.[8] The reason for the "recharacterization" is that the offense of false informing is not a predicate offense for a RICO charge;[9] the offense of official misconduct, however, is delineated as a "racketeering activity" and thus may be used to support a RICO charge. See I.C. §§ 35–45–6–1 and—2. Given the State's argument that Lindsay's false informing in 2003 and 2004 constituted acts of official misconduct, the State therefore claims that the five-year limitation period for the C-felony RICO offense had not yet expired when the indictment was filed in December of 2004.

In response, Lindsay argues that his alleged conduct in 2003 and 2004, if anything, constituted the offense of false informing, not the offense of official misconduct, as evidenced, in part, by the fact that the grand jury issued an indictment for two counts of false informing covering that alleged conduct. Lindsay maintains that the State is simply re-labeling the false informing offenses as official misconduct to bring the alleged 2003 and 2004 offenses within the purview of the predicate offenses required to establish a continuation of the pattern of racketeering activity. Lindsay asserts that without the 2003 and 2004 offenses, the last predicate offense

7. The indictment alleges two counts of false informing: the first occurring on or about July 28 to 29, 2003 and the second occurring on or about November 11, 2004. These dates coincide with Lindsay's return to Indiana to assist the cold case team with the investigation of the 1988 murders.

8. The record does not indicate what activities during the 1977 to 1988 time frame constitute

the basis for the allegation that the "racketeering activity" began in 1977.

9. Indiana Code § 35–44–2–2 (Burns Code Ed. Supp.2006) concerns false reporting, a Class D felony, and false informing, as a Class A or B misdemeanor. The two crimes are defined differently. The indictment here alleges commission of false informing.

for the RICO charge occurred in 1993 or 1994.[10]

■ We agree with Lindsay. To constitute the offense of official misconduct, the misconduct must rest upon criminal behavior that is related to the performance of official duties. *State v. Dugan*, 793 N.E.2d 1034, 1039 (Ind.2003); *see also* Ind. Code § 35–44–1–2 (Burns Code Ed. Supp. 2006). In an attempt to demonstrate that the pattern of racketeering activity continued into 2003 and 2004, the State simply recharacterizes the conduct giving rise to the false informing charges as official misconduct. We fail to see, however, how conduct giving rise to the false informing charges, i.e. Lindsay's alleged false statements in 2003–2004 concerning the 1988 murders, would be related to Lindsay's performance of his official duties as a federal police officer working in the State of Florida for the Department of Veterans Affairs.[11] The State cannot avoid application of the statute of limitation by simply recharacterizing conduct as an offense which it is not. Aside from the conduct giving rise to the false informing charges, the State does not allude to any other conduct on Lindsay's part which would support a charge of official misconduct or any other offense which could be deemed to be a continuation of the pattern of racketeering activity. Without regard to the 2003 and 2004 conduct, it appears from the record that the last alleged racketeering activity occurred in 1990 during Lindsay's investigation of the 1988 double homicide,

or, as noted in footnote 10, *supra*, perhaps as late as 1993 or 1994.

The State also argues that the RICO charge was timely filed because the statute of limitation was tolled by Lindsay's efforts to conceal himself and evidence of his crimes. Pursuant to I.C. § 35–41–4–2(h)(1) and (2), the limitation period does not include any period during which the accused is not "usually and publicly resident in Indiana or so conceals himself or herself that process cannot be served" or the accused "conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence."

■ First we consider whether Lindsay concealed himself so as to toll the statute of limitation. *See* I.C. § 35–41–4–2(h)(1). It is undisputed that Lindsay moved from Clay County in 1990 and that in 1996, Lindsay moved to the State of Florida. Other than a bare assertion by the State that the Indiana State Police had difficulty locating Lindsay, the evidence in the record demonstrates that upon reopening the cold case file on the 1988 murders, the cold case team located and contacted Lindsay in Florida, and Lindsay voluntarily returned to Indiana to discuss various aspects of his investigation of the 1988 murders with cold case detectives. The State readily admits that prior to his return to Indiana in July 2003, Lindsay was not a suspect in any crime.[12] It is also undisputed that upon request by the cold

---

**10.** In a memorandum in response to Lindsay's motion to dismiss, the State asserts that predicate offense number 15 is the offense of official misconduct, which is apparently based upon allegations that Lindsay committed sexual battery in 1993 or 1994.

**11.** It is not sufficient to reason that Lindsay was a police officer in Brazil, Indiana in

1988–1996 and was a police officer in Florida in 2003–2004. *See Dugan, supra.*

**12.** There is nothing in the record which suggests, and no argument is made, that attempts were made to locate Lindsay prior to the reopening of the cold case file in 2003 and that he was unable to be found.

case team, Lindsay voluntarily returned to Indiana on a second occasion. Additionally, we note that, a far cry from an attempt to conceal himself, Lindsay is employed as a federal police officer working for the Department of Veterans Affairs. Based upon the foregoing, we conclude that the simple fact that Lindsay moved to Florida in 1996 is not indicative of an intent to avoid service of process. We therefore conclude that Lindsay's move to the State of Florida did not constitute an act of concealment so as to toll the statute of limitation. *See Heitman v. State*, 627 N.E.2d 1307 (Ind.Ct.App.1994) (holding that statute of limitation was not tolled where accused, although residing outside Indiana, was easily located, remained in contact with police, and cooperated with authorities).

The State further argues the limitation period was tolled by Lindsay's efforts to conceal evidence of his crimes, including repeated threats and acts of intimidation directed toward witnesses. As recounted above, three witnesses who apparently provided statements during the initial investigation of the 1988 murders recanted their statements to the cold case team, each claiming that Lindsay threatened or intimidated them in various ways to force them to provide false statements or to fear coming forward with evidence of Lindsay's alleged crimes. A fourth individual informed cold case detectives of additional threats and intimidation by Lindsay.

Lindsay responds that even assuming the allegations of threats and intimidation are true, the statute of limitation would have ceased to be tolled, at the latest, after he moved to Florida and no longer had contact with those witnesses. In support of his argument, Lindsay directs us to

*Thakkar v. State*, 613 N.E.2d 453 (Ind.Ct. App.1993).

In *Thakkar*, this court considered whether a Class C-felony charge for performing an illegal abortion survived the five-year statute of limitation where the accused, a doctor, threatened the victim, with whom he had had a personal relationship, with physical harm if she told anyone what had happened. The illegal abortion was performed by Thakkar in October 1983, and Thakkar regularly repeated his threats to the victim until sometime in January of 1984, after which the victim had no contact of any kind with Thakkar. Law enforcement officials were not notified of the incident until February of 1989, and charges were not filed until November of 1989.

In deciding whether the statute of limitation was tolled by Thakkar's threats of physical violence, the *Thakkar* court considered the earlier case of *Crider v. State*, 531 N.E.2d 1151 (Ind.1988). In *Crider*, our Supreme Court held that the defendant-father's day-to-day coercive influence over his victim-child constituted positive acts of intimidation so as to toll the running of the statute of limitation until such time as the child-victim reported the abuse. After review of the *Crider* Court's analysis, the *Thakkar* court found a distinct difference "between the situation where the victim is a child [13] under the authoritative day-to-day continuing coercive influence of a defendant and one in which the victim is neither a child nor under the authoritative day-to-day continuing coercive influence of a defendant." *Id.* at 457–58.

The *Thakkar* court then held that it was "at least arguable" that due to the nature

---

**13.** Citing to a string of cases, the court noted the vulnerability of children which courts often recognize. *Id.* at 457.

of the relationship between Thakkar and his victim, Thakkar had some coercive influence over his victim immediately following the abortion. *Id.* at 458. *Assuming* that such coercive influence rose to the level of concealment of the crime, the court noted that such influence ceased after all contact between Thakkar and the victim ended in January 1984, and therefore concluded that it was at that point that the statute of limitation began to run. *Id.* Because the charge was not filed until November of 1989, nearly six years after the coercive influence ceased, the court upheld the trial court's dismissal of the charge upon the grounds that the charge was not timely brought. *Id.*

The State attempts to distinguish *Thakkar*, asserting that Lindsay "had an official presence that continued to intimidate the witnesses into silence long after he left Indiana." Appellant's Brief at 9. The State suggests that Lindsay's threats may have caused the witnesses to fear other police officers. The State further attempts to distinguish *Thakkar*, asserting that law enforcement officers, by the very nature of their profession, are more intimidating than doctors, and that a law enforcement officer's threats are more pervasive than a doctor's threats to his victim with whom he ceased to have contact. The State therefore argues that *Thakkar* does not prevent Lindsay's repeated threats and acts of intimidation from tolling the statute of limitation.

 While the State makes a noble attempt to distinguish *Thakkar*, we agree with Lindsay that the *Thakkar* decision supports the trial court's conclusion that the statute of limitation was not tolled and thus, the RICO charge was untimely filed. Even accepting the State's claim that a police officer's threats and acts of intimidation may be more pervasive than threats or acts of intimidation occasioned by someone who is not a police officer, we think it is unreasonable to say that such threats and acts of intimidation acted as a coercive influence over those so threatened for a period of thirteen years. The State makes no claim, and there is nothing in the record which suggests, that after his involvement in the murder investigation ceased in 1990 Lindsay continued with a pattern of conduct of threatening or intimidating such witnesses. We think it is reasonable to conclude that Lindsay's alleged coercive influence ceased and the statute of limitation began to run, at the latest, if not sooner, when Lindsay moved out of the State of Indiana in 1996.[14] The five-year statute of limitation would therefore have expired in 2001.

Having concluded that the 2003 and 2004 offenses do not constitute predicate offenses for the RICO charge and that the five-year statute of limitation was not tolled by acts of concealment, we affirm the trial court's dismissal of the Class C-felony RICO charge as untimely.

The judgment of the trial court is affirmed.

ROBB, J., and BARNES, J., concur.

---

**14.** Here, we note that alleged offense number 15, as mentioned in footnote 10 *supra,* allegedly occurred in 1993 or 1994. Such does not affect our conclusion that the statute of limitation would have ceased to be tolled, at the latest, in 1996.