Jeffery L. SLOAN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A04–0909–CR–544.

Court of Appeals of Indiana.

May 17, 2010.

Alan K. Wilson, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole Dongieux Wiggins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Following a jury trial, Jeffery L. Sloan was convicted of two counts of child molesting, one as a Class A felony[1] and the other as a Class C felony.[2] On appeal, he raises three issues; however, we find the following two restated issues to be dispositive:

I. Whether the trial court abused its discretion when it denied Sloan's pretrial motion to dismiss the Class C felony child molesting charge because it was filed beyond the applicable five-year statute of limitations; and

II. Whether the forty-year sentence imposed on the Class A felony conviction was inappropriate in light of the nature of the offense and the character of the offender.

We reverse in part, affirm in part, and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

M.A., the victim in this case, was born in May of 1978. M.A.'s parents are Shirley and Gerald Sloan ("Shirley" and "Gerald"). Although Gerald is M.A.'s step-father, he has been M.A.'s father figure since she was about one year old, and Gerald has always treated M.A. as his own child. Sloan is Gerald's brother and thus M.A.'s step-uncle.

Sloan began molesting M.A. in January 1984, when she was six years old. He continued to regularly molest her until 1991, when she was thirteen years old. The first incident occurred at M.A.'s grandmother's home (mother of Sloan and Gerald), while M.A. sat on Sloan's lap on a dining room chair; Sloan inserted his finger into her vagina, and he put his mouth on her breast. Sloan told her "not to tell." *Tr.* at 199. Sloan repeatedly molested M.A. by inserting his finger in her vagina, "hundreds" of times between 1984 and 1991. *Id.* at 200, 203. On other occasions he fondled and licked her breasts, and once, he kissed M.A. and "stuck his tongue

---

1. *See* Ind.Code § 35–42–4–3(a)(1).

2. *See* Ind.Code § 35–42–4–3(b).

in [her] mouth[.]" *Id.* at 204. Most of the incidents occurred at Sloan's mother's home, but others happened at Sloan's aunt's home. Each time Sloan molested M.A., he warned her not to tell anyone. *Id.* at 199, 203, 205. He also told her on one or more occasions that she would go to jail if she disclosed the molestations. *Id.* at 206. The last molestation occurred in 1991, at Sloan's home on his living room couch, where Sloan, his wife, and M.A. were sitting and watching a movie.

In 2007, M.A. told her mother, and soon after, Gerald, about the abuse that Sloan had inflicted on her. M.A. came forward with the information because Sloan had begun dating a woman with two young daughters, and M.A. was concerned for their safety. Shortly after learning about the abuse, Gerald had a telephone conversation with Sloan to confront him about it, and Sloan repeatedly told Gerald, "I thought she wanted it." *Tr.* at 122, 134; *see also id.* at 126. About a year later, M.A. and her mother went to authorities to report Sloan's molestations.[3]

In June 2008, the State charged Sloan with: (1) Count I, Class A felony child molesting for intentionally performing deviate sexual conduct with M.A.; and (2) Count II, Class C felony child molesting for intentionally performing fondling or touching of M.A. Before the start of the trial, Sloan filed a motion to dismiss Count II, the Class C felony charge, on the basis that it was filed sixteen years after the date of the commission of the alleged offense and thus was beyond the applicable five-year statute of limitations. Ind.Code §§ 35–42–4–3(b); 35–41–4–2(e). The trial court conducted a hearing, where the State

asserted that the statute of limitations had not run because of acts of concealment by Sloan. Following the conclusion of evidence the next day, the trial court denied Sloan's motion to dismiss.

The jury found Sloan guilty as charged. The trial court sentenced him to forty years for the Class A felony conviction and six years for the Class C felony conviction and ordered the sentences to be served consecutively. Sloan now appeals.

## DISCUSSION AND DECISION

### I. Statute of Limitations

 Sloan contends that the trial court erred when it denied his motion to dismiss Count II, the Class C felony. In general, we review the denial of a motion to dismiss for an abuse of discretion. *McCown v. State*, 890 N.E.2d 752, 756 (Ind.Ct.App.2008); *W.C.B. v. State*, 855 N.E.2d 1057, 1059 (Ind.Ct.App.2006), *trans. denied* (2007). However, our standard of review for the interpretation of a statute is de novo. *Marshall v. State*, 832 N.E.2d 615, 625 (Ind.Ct.App.2005), *trans. denied.* We review legal determinations to ascertain whether the trial court erred in its application of the law. *Id.*

 Sloan argues that the trial court should have dismissed Count II, which alleged Class C felony child molesting by fondling or touching, because the charge was filed well beyond the applicable statute of limitations. A statute of limitations is designed to insure against prejudice and injustice to a defendant that is occasioned by a delay in prosecution. *State v. Lind-*

---

**3.** Shirley called Sloan from the police station, and a recording of that call was admitted into evidence at trial. Although a transcript of the recording is not included in the record before us, Sloan concedes that he "made admissions on the tape." *Appellant's Br.* at 4. Similarly,

Sloan later gave a videotaped statement to a sergeant of the Muncie Police Department, and although a transcript was not provided, Sloan admits that he "made certain admissions on the tape[.]" *Id.*

*say,* 862 N.E.2d 314, 317 (Ind.Ct.App. 2007), *trans. denied.* The limitation period seeks to strike a balance between a defendant's interest in being placed on notice so as to be able to formulate a defense for a crime charged, and the State's interest in having sufficient time to investigate and develop a case. *Id.* It is the State's burden to prove that the crime charged was committed within the statute of limitations. *Id.* Any exception to the limitation period must be construed narrowly and in a light most favorable to the accused. *Id.*

 The particular statute of limitations at issue in this case is Indiana Code section 35–41–4–2(a)(1), which provides that a prosecution for a Class C felony is barred unless it is commenced within five years of the offense.[4] However, the five-year statute of limitations may be tolled under certain exceptions. In particular, subsection (h) provides in relevant part:

> The period within which a prosecution must be commenced does not include any period in which:
>
> (2) the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence[.]

Ind.Code § 35–41–4–2(h)(2). To constitute concealment of evidence of the offense sufficient to toll the statute of limitations, there must be a positive act performed by the defendant calculated to prevent discovery of the fact that a crime has been committed. *Sipe v. State,* 797 N.E.2d 336, 340 (Ind.Ct.App.2003); *Umfleet v. State,* 556 N.E.2d 339, 341 (Ind.Ct.App.1990) (concealment must result from defendant's

positive acts to fall within concealment exception), *trans. denied.* Any exception to the statute of limitations must be construed narrowly and in a light most favorable to the accused. *Thakkar v. State,* 613 N.E.2d 453, 457 (Ind.Ct.App.1993).

 Here, the State argues that the concealment exception applies to this case because Sloan instructed M.A. on "hundreds" or even "thousands" of occasions not to tell anyone about the incidents, causing M.A. to become scared and keep his abuse a secret, "thereby concealing the fact that a crime had been committed." *Appellee's Br.* at 7. Sloan responds that, even if his actions and statements constituted concealment, the last incident of molestation occurred in 1991, and the statute of limitations would have run five years after that, or 1996.

In 1988, the Indiana Supreme Court decided *Crider v. State,* 531 N.E.2d 1151 (Ind.1988), where Crider faced charges of child molesting, child abuse, and battery, based on acts he committed against his nine-year-old daughter. Crider repeatedly threatened her with bodily harm if she disclosed what had happened. Prior to trial, Crider filed a motion to dismiss all the charges based on the five-year statute of limitations. The trial court denied his motion, and he was convicted of, among other things, seven counts of child molesting.

On appeal, Crider argued that the trial court erred when it denied his motion to dismiss, but our Supreme Court was not persuaded. The *Crider* Court determined that by his threats of physical violence, "[Crider] thereby successfully concealed the fact of his crimes by his positive acts of intimidation of his victims; thus, *the statute of limitations did not run until the*

---

4. The prosecution for child molesting that involves sexual intercourse or deviate sexual conduct must be commenced before the vic-

tim reaches thirty-one years of age. Ind.Code § 35–41–4–2(e).

*victim made her disclosure to authorities."* *Crider*, 531 N.E.2d at 1154 (emphasis added).

In the case before us, the State relies on that latter statement—"The statute of limitations did not run until the victim made her disclosure to authorities"—to support its position that the statute of limitations did not begin to run until M.A. made her disclosure to authorities in 2008. However, further analysis reveals that, for a couple of reasons, *Crider* is not determinative. First, even though *Crider* has not been explicitly overruled, the law regarding the application of the concealment exception has, as will be explained below, changed over time. Second, although *Crider* noted that "some of the acts . . . had taken place more than five years prior to the charges being filed," the opinion does not otherwise specifically identify when the daughter reported the molestation to authorities, whether (or how long) Crider's threats continued after the last incident occurred, or when charges were actually filed against Crider. Thus, we cannot know how the facts of *Crider* compare to Sloan's situation; accordingly, we find that a wholesale application of *Crider's* "disclosure to authorities" language to the present case would not be appropriate.

Two years after *Crider*, the Court of Appeals decided *Umfleet*, where the defendant was charged with Class C felony child molesting stemming from acts committed upon his daughter. As is relevant to the present appeal, Count I alleged fondling and touching in February 1982. The victim reported the abuse in June 1988, and the State brought charges in May 1989. Umfleet filed a motion to dismiss Count I based on the statute of limitations, and the trial court denied the motion and Umfleet was convicted. On appeal, the State argued, as it does now, that Umfleet intimidated his daughter and manipulated her into keeping silent, and that the intimidation amounted to concealment and excused the State's delay in prosecuting the charge. The *Umfleet* court determined that the record did not reflect that Umfleet had engaged in positive acts of intimidation to induce his daughter to keep silent. In finding that the trial court erred by denying the motion to dismiss, the *Umfleet* court held, "Umfleet's conduct does not rise to the level of threats and intimidation advanced by the defendant in *Crider* [.]" *Umfleet*, 556 N.E.2d at 343. We note that the *Umfleet* court's analysis focused not on the "disclosure to authorities" language of *Crider*, but rather on whether positive acts of intimidation tolled the five-year statute of limitations.

However, in 1992, the Court of Appeals decided *Wera v. State*, 601 N.E.2d 377 (Ind.Ct.App.1992), *trans. denied*, and there returned to the "until the victim made [ ] disclosure to authorities" tolling language of *Crider*. In *Wera*, the defendant was charged with, among other things, having performed sexual intercourse with R.W. during 1985 or 1986, when R.W. was three years old. The jury was not able to reach a verdict on this count, and the trial court declared a mistrial.

On appeal, Wera argued that he was entitled to judgment on the evidence on that count and that the trial court erred by declaring a mistrial on it. A panel of this court instructed, "Because the March 1, 1991 information was filed outside the statute of limitations period, the State was . . . required to present evidence of the existence of an exception to the [five-year] statute of limitations." *Id.* at 379. The evidence showed that Wera threatened to kill R.W. if she told anyone what he had done. In finding that Wera was not, in fact, entitled to judgment on the evidence, the *Wera* court held, "The State . . . presented evidence that Wera concealed evi-

dence of his offense by threatening to kill R.W., tolling the statute of limitations *until R.W. made her disclosure to authorities.*" *Id.* at 379–80 (emphasis added). In considering if and how *Wera* applies to the present case, we observe that, although the *Wera* court determined that the defendant's acts of concealment tolled the statute of limitations until the victim disclosed the abuse to authorities, the decision did not indicate when that disclosure was made to authorities, nor if Wera continued to make threats to R.W. after the abuse ceased.

Less than a year later, this court decided *Thakkar*, which appeared to clarify, if not take a turn away from, *Crider's* "disclosure to authorities" approach. In *Thakkar*, a doctor performed illegal abortions on several different women with whom he had engaged in personal relationships. Thakkar filed a motion to dismiss Count VIII, a Class C felony for performing an illegal abortion on C.H., asserting that the statute of limitations had run. The trial court denied the motion, and Thakkar was convicted. On appeal, the evidence showed that in February 1983, C.H. became pregnant with Thakkar's child and that in October 1983 he drugged C.H. and aborted her pregnancy. After she awoke, Thakkar made threats to kill her and her family if she did not remain quiet about the baby. He continued making threats until January 1984, after which C.H. had no more contact with Thakkar. She notified law enforcement in February 1989. An indictment was returned in November 1989, more than five years after commission of the offense.

Ultimately, the *Thakkar* court rejected the State's argument that, under *Crider*, Thakkar's threats to C.H. tolled the running of the statute of limitations until she revealed the facts to law enforcement in February 1989. The *Thakkar* court reasoned, "Assuming there was some coercive influence[5] rising to the level of concealment of the crime, that influence ceased in January of 1984 because [C.H.] did not have any contact at all with Thakkar after that date. *In the absence of coercive influence, the statute of limitations began to run.*" *Thakkar*, 613 N.E.2d at 458 (emphasis added). The court determined that, at the latest, the statute began to run in January 1984, and charges were brought more than five years later, in November 1989; consequently, the trial court erred by not dismissing Count VIII. *Id.* By this language, *Thakkar* appears to mark a change in analysis, turning away from the "when the victim made [ ] disclosure to authorities" approach found in *Crider* and toward an examination of a defendant's acts of concealment, when those terminated, when the victim reported the abuse, and when State filed charges.

About a decade later, a panel of this court decided *Sipe*, to which both parties cite in the present case. In that case, Sipe repeatedly molested his daughter, A.S., between January 1995 and January 1998, when A.S. was in sixth and seventh grades. "Because Sipe threatened her with physical harm, A.S. did not reveal what was happening to her for years." *Sipe*, 797 N.E.2d at 339. However, when Sipe announced to A.S. that he planned to move on to her younger sisters, she was able to

---

**5.** In *Thakkar*, the court acknowledged "a distinction between a situation where the victim is a child under the authoritative day-to-day continuing coercive influence of a defendant and one in which the victim is neither a child nor under the authoritative day-to-day continuing coercive influence of a defendant."

*Thakkar*, 613 N.E.2d at 457–58. However, based on the facts presented, including the nature of Thakkar's relationship with C.H., the court determined Thakkar had coercive influence over her following the abortion, when he frequently called and threatened her. *Id.* at 458.

convince her mother to leave Sipe, and they moved in August 2001. Shortly thereafter, A.S. reported Sipe to the authorities. The State filed a variety of charges against Sipe in January 2002, including child molesting, sexual misconduct with a minor, and child solicitation. A jury convicted him of all but one charge.

On appeal, Sipe asserted that the Class C felony child molesting conviction should be reversed because the acts giving rise to the charge occurred outside the statute of limitations. In analyzing the issue, the *Sipe* court reviewed the tolling effect of a defendant's positive acts of concealment and observed that although Sipe's crimes committed against A.S. occurred from January 1, 1995 through January 2, 1998, Sipe had successfully concealed them through intimidation and threats.

As we mentioned above, both the State and Sloan cite to *Sipe* in support of their respective arguments. The State suggests that *Sipe* "[s]imilarly" follows *Crider* when it states,

> Because Sipe successfully concealed the crimes by his positive acts of intimidation of A.S., the *statute of limitations did not begin to run until A.S. made her disclosure to the authorities.*

*Sipe,* 797 N.E.2d at 340 (emphasis added); *Appellee's Br.* at 6. However, after making that statement, the *Sipe* court continued with an examination of the period of molestation, whether and for how long any acts of intimidation and concealment occurred, when that ended, and when the molestation was reported to authorities.

> The record discloses that the earliest date A.S. would have reported Sipe's crimes was sometime after they moved away from Sipe in August 2001. Thus, the State had until at least July 2006 to prosecute Sipe for the crimes he committed against A.S. from January 1, 1995, through January 2, 1998, and suc-

> cessfully concealed for several years thereafter with his threats of physical violence.

*Sipe,* 797 N.E.2d at 340–41. We conclude that, although the *Sipe* decision includes *Crider's* "disclosure to the authorities" language, the weight of *Sipe's* analysis focuses on the defendant's positive acts of concealment, when the intimidation ended, and whether charges were brought within five years of that date. We find this type of fact-specific approach to be the most sensible and reasonable way to determine if, and for how long, the concealment exception tolls the five-year statute of limitations of Indiana Code section 35–41–4–2(h)(2). To hold that the five-year statute of limitations does not begin to run until such time as a victim discloses the abuse to authorities, without regard to when a defendant's acts of concealment terminated, does not serve the statute's intended purpose.

Turning to the timeline of the case before us, Sloan repeatedly molested M.A. for approximately seven years, beginning in January 1984, when she was six years old. After each incident, Sloan would tell M.A. not to tell anyone what had happened, which scared M.A. and made her afraid to report what Sloan had done to her. The molestations stopped in 1991, when she was thirteen years old. M.A. recalls the details of the last occurrence, which happened on the couch in Sloan's home. M.A. did not report or indicate in any way that Sloan continued to intimidate or threaten her after the last molestation in 1991, nor does the State make any claim that Sloan continued with a pattern of threatening or intimidating conduct after that time. M.A.'s testimony was that, although she would see Sloan on occasion at family functions, she "stayed the hell away from him." *Tr.* at 220. Under these circumstances, and following the direction of

*Thakkar* and *Sipe,* we find that although Sloan engaged in threats, intimidation, and other positive acts of concealment during the years that he was molesting M.A., the concealment ceased after the molestation stopped in 1991, and it was then that the statute of limitation began to run. The applicable five-year limitation period would therefore have expired in 1996; consequently, the trial court erred when it denied Sloan's motion to dismiss. *See Lindsay,* 862 N.E.2d at 321 (trial court properly granted motion to dismiss filed by defendant facing RICO charges because there was no evidence defendant continued with pattern of threatening witnesses after he moved out of Indiana in 1996, and therefore concealment ceased in 1996 and statute of limitations expired in 2001). Accordingly, we are compelled to reverse Sloan's conviction for Class C felony child molesting.[6]

## II. Sentencing

■ Conviction of a Class A felony results in a sentence between twenty and fifty years, with the advisory sentence being thirty years. Ind.Code § 35–50–2–4. Sloan asks us to revise the forty-year sentence that he received on the Class A felony child molesting conviction. We may revise a sentence if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Upton v. State,* 904 N.E.2d 700, 704 (Ind.Ct.App.2009), *trans. denied.* The defendant has the burden of persuading this court that his sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

■ Here, Sloan concedes that "the nature of the offense was particularly seri-ous," but urges that the forty-year sentence on Count I, the Class A felony child molesting charge, was inappropriate in light of his character, and he asks us to reduce the sentence to the thirty-year advisory sentence. *Appellant's Br.* at 11. He reminds us that he does not have a juvenile criminal history, and the present charges are his only contact with the adult criminal justice system, noting, "[H]e has never had even a traffic violation." *Id.* Sloan also asserts that the offenses for which he was convicted happened over sixteen years ago, suggesting, "[W]hatever [he] may have done when he was younger, he has reformed his life and is not the same person he was [then]." *Id.*

We acknowledge that Sloan's criminal history, or lack thereof, standing alone likely would not support a forty-year sentence. However, we will not ignore that portion of Sloan's character illustrated by his continued and repeated molestations of his step-niece for seven years, starting when she was six years old. That these offenses occurred some time ago does not diminish their significance, or the lasting effects on M.A. Furthermore, we cannot gloss over the nature of the crimes, merely because Sloan concedes that they were "serious." *Appellant's Br.* at 11. Sloan repeatedly molested M.A., a child and a relative, and each time he told her not to tell anyone, and sometimes he threatened her with the prospect of being sent to jail. By virtue of their familial relationship, M.A. repeatedly encountered Sloan as she was growing up, and she suffered his abuse over the span of at least seven years. The trial court characterized the nature of the offenses as "disturbing" and "particularly heinous." *Tr.* at 305–06. We agree. The nature of the offense and the character of the offender support the trial

---

6. Because we reverse the Class C felony conviction, we need not address Sloan's issue asserting that the Class A and Class C felony convictions constitute double jeopardy.

court's imposition of a forty-year sentence on the Class A felony child molesting conviction.

Reversed in part, affirmed in part, and remanded for proceedings consistent with this opinion.

FRIEDLANDER, J., and ROBB, J., concur.