(No. 18023.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ERNEST J. ROSS, Plaintiff in Error.

*Opinion filed April 20, 1927.*

1. CRIMINAL LAW—*exception authorizing an indictment after period of limitation must be proved.* An indictment must show on its face that the offense was committed on a date within the period of limitation provided in division 4 of the Criminal Code, and to bring a case within the exception as to a defendant who was not usually and publicly a resident within the State of Illinois the prosecution must allege and prove the existence of facts within the exception, and in the city of Chicago the exception is not proved by the testimony of police officers that they had not seen the defendant in the city, where there is no proof of any effort to ascertain his place of residence and no proof of non-residence.

2. SAME—*criminal statute of limitation differs from statutes in civil cases.* The statute of limitation in criminal cases differs from such statutes in civil cases, in that in the latter they are statutes of repose while in the former the statute creates a bar to the prosecution, constitutes a surrender of the right to prosecute and is an act of grace.

3. SAME—*statute of limitation of prosecution must be liberally construed.* A statute which limits the time within which a prosecution must be brought must be liberally construed, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition by the legislature of the fact that time gradually wears out proof of innocence and is a notification that a fixed and positive period established by it destroys all proofs of guilt.

4. SAME—*when statement made in defendant's presence is not admissible.* An admission is implied from the conduct of a party charged with crime who remains silent when one states in his hearing that he was connected with the crime, when the statement is made under circumstances which allow an opportunity to reply and where a man similarly situated would ordinarily deny the imputation; but where the evidence shows that the defendant, immediately after the accusation, was taken from the presence and hearing of the accuser, who was being prepared for an operation and in such condition that he cannot recall afterwards whether he identified the defendant or not, there is not sufficient foundation for the admission of the statement.

325—27

WRIT OF ERROR to the Third Division of the Appellate
Court for the First District;—heard in that court on writ·
of error to the Criminal Court of Cook county; the Hon.
EMANUEL ELLER, Judge, presiding.

EVERETT JENNINGS, and JOHN F. TYRRELL, for plain-
tiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E.
CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD
E. WILSON, and CLARENCE E. NELSON, of counsel,) for
the People.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

Plaintiff in error, Ernest J. Ross, was charged in an in-
dictment returned January 31, 1923, with a crime alleged
to have been committed August 22, 1919. The first count
charged him with assault with intent to murder, and the
second with assault with a deadly weapon with intent to
inflict a bodily injury upon the person of Frank E. Rhode,
no considerable provocation appearing. Each count alleged
that since August 22, 1919, plaintiff in error "was not usu-
ally and publicly a resident within the State of Illinois."
The cause was continued twenty-one times, and a hearing
was finally had July 13, 1925. Plaintiff in error was found
guilty under the second count of the indictment, and the
court sentenced him to imprisonment in the house of cor-
rection for a term of six months and to pay a fine of $100
and costs. This judgment was affirmed by the Appellate
Court for the First District, and this writ of error is prose-
cuted to review that judgment.

About one o'clock A. M. August 22, 1919, Frank Rhode,
a motorcycle patrolman of the city of Chicago, saw a Mar-
mon automobile towing a Ford east on Lake street, at Ked-
zie avenue. The Ford carried no lights, and Rhode fol-

lowed the automobile east to Sacramento boulevard, where he ordered the driver to stop. A man about six feet tall, weighing about 175 pounds, and wearing a cap and a khaki army shirt, stepped out of the automobile, and as the officer left his motorcycle and started toward the Marmon fired three shots at him, one of them taking effect. The assailant and three other men who were in the automobiles all ran from the scene. Other police officers, hearing the gunshots, hurried to the place. Some of them removed Rhode to Washington Boulevard Hospital while the others pursued the fleeing men. Plaintiff in error was arrested in a vacant lot across the street from the scene of the shooting. He was lying face down on the ground, concealed by weeds growing in the lot, and had an automatic pistol in his hand. It contained seven loaded cartridges in the clip and one in the chamber, which was all the gun would hold. Plaintiff in error was taken to the hospital and into the presence of Rhode, who was on the operating table. Rhode said, "That is the son-of-a-bitch that shot me," and plaintiff in error was immediately taken from the room and removed to the police station, where he was questioned. He was asked why he shot Rhode, and answered, "Why didn't you get the right man?" The dress of another man who fled from the scene of the shooting was similar to that of plaintiff in error and they were about the same size. There was a hearing at the DesPlaines street branch of the municipal court in September, 1919, and officer Rhode was present. On cross-examination Rhode was asked whether he had not testified at the preliminary hearing that he could not describe the man who shot at him, and he answered that he did not remember. The record does not show the result of the preliminary hearing, but from other facts appearing plaintiff in error must have been discharged.

In order to prove the allegation of the indictment that plaintiff in error "was not usually and publicly a resident within the State of Illinois" between August 22, 1919, and

the date of the return of the indictment, the People produced five police officers, who testified that they had not
seen plaintiff in error in the city of Chicago between September, 1919, and March, 1923. Some of these witnesses
knew plaintiff in error prior to August 22, 1919, and had
seen him driving an automobile in the vicinity of the Warren avenue and the DesPlaines street police stations. None
of them knew where he lived, nor did any of them testify
that they had made any effort to ascertain his place of residence or his whereabouts at any time. There is no proof
in the record that plaintiff in error concealed himself within
the State of Illinois or that he resided outside the State of
Illinois at any time prior to March, 1923. The fact that
these police officers did not see this particular person of
the 3,000,000 people in the city of Chicago between September, 1919, and March, 1923, does not tend to prove that
he was not usually and publicly resident within the State
of Illinois.

Division 4 of the Criminal Code provides that all indictments for felony, except murder, manslaughter, arson
and forgery, must be found within three years next after
the commission of the crime, and for misdemeanors within
eighteen months, except that no period during which the
party charged was not usually and publicly resident within
this State shall be included within the time of limitation.
The indictment must show on its face that the offense was
committed on a date within the period of limitation, (*People* v. *Rhodes,* 308 Ill. 146,) or there must be an averment
which places the case within an exception. (*Lamkin* v.
*People,* 94 Ill. 501; *Garrison* v. *People,* 87 id. 96.) It being incumbent upon the prosecution to allege the existence
of facts which bring the case within the exception to the
Statute of Limitations, the burden of proving the allegation
necessarily follows. (*Bartelott* v. *International Bank,* 119
Ill. 259; *Ingersoll* v. *Davis,* 14 Wyo. 120, 82 Pac. 867;
*People* v. *Whittington,* 143 Ill. App. 438.) Statutes of

limitations in criminal cases differ from such statutes in civil cases, in that in the latter they are statutes of repose while in the former they create a bar to the prosecution. (*State* v. *Steensland,* 33 Ida. 529, 13 A. L. R. 1442.) A statute of limitation in criminal cases is an act of grace; a surrendering by the sovereign of its right to prosecute. The statute is not a process to be strictly and grudgingly applied, but an amnesty declaring that after a certain time oblivion shall be cast over the offense and that the offender may from thenceforth cease to preserve the proofs of his innocence, for the proofs of his guilt are blotted out. Such statutes must be liberally construed, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition by the legislature of the fact that time gradually wears out proofs of innocence and a notification that a fixed and positive period established by it destroys all proofs of guilt. In *Moore* v. *State,* 14 Vroom, 203, 39 Am. Rep. 558, the New Jersey Court of Errors and Appeals, in discussing a statute of limitations in a criminal case, says: "Before committing any offense the citizen had a natural and absolute right to life and liberty. By his offense the State acquired the right to deprive him of life or of liberty to the extent prescribed by the violated law. The citizen remained in possession of life and liberty, but his possession was liable to be disturbed by means of a prosecution to be instituted by the State according to law. His offense, however, was local, and subjected his possessions to impairment only within the jurisdiction whose laws he had broken. In these respects the relation between the offender and the State corresponds to that between one having the possession of land without the right of possession and one entitled to invade that possession by action at law. In both cases there is a right of suit, which must be pursued, if at all, within and under the laws of a single jurisdiction, and in both cases the wrongdoer holds a possession which only

such legal prosecution can take away. In view of this position of things the Statute of Limitations declares that no person shall be prosecuted, tried or punished for an offense unless the indictment be found within two years after the crime. This, in effect, enacts that when the specified period shall have arrived the right of the State to prosecute shall be gone, and the liability of the offender to be punished—to be deprived of his liberty—shall cease. Its terms not only strike down the right of action which the State had acquired by the offense, but also remove the flaw which the crime had created in the offender's title to liberty. In this respect its language goes deeper than statutes barring civil remedies usually do. They expressly take away only the remedy by suit, and that, inferentially, is held to abate the right which such remedy would enforce and perfect the title which such remedy would invade; but this statute is aimed directly at the very right which the State has against the offender—the right to punish; at the only liability which the offender has incurred, and declares that this right and this liability are at an end. Corresponding provisions in a statute concerning lands would undoubtedly be held to extinguish every vestige of right in him who had not asserted his claim and to perfect the title of the possessor. Giving them the same force regarding crimes, they annihilate the State's power to punish and restore the offender's rights to their original status."

The evidence of the statement made by Rhode when plaintiff in error was brought into his presence in the operating room at the hospital was admitted on the theory that his failure to deny the accusation was a confession of its truth. An admission may be implied from the conduct of a party charged with crime who remains silent when one states in his hearing that he was concerned in the commission of the crime, when the statement is made under circumstances which allow an opportunity to him to reply and where a man similarly situated would ordinarily deny the

imputation. (*People* v. *Nitti,* 312 Ill. 73; *People* v. *Wilson,* 298 id. 257.) There is no proof in this record that plaintiff in error heard the statement implicating him or that he was given an opportunity to reply to it and voluntarily refused. The officers who brought him to the operating room say that Rhode made the accusation from the operating table and that they took plaintiff in error from the room immediately. On the trial Rhode testified that he had not seen the man brought before him prior to that night and did not then know him, and that he remembered officer Donahue coming into the operating room shortly after he had been placed on the operating table but could hardly tell whether there was anyone in the room with him. He testifies that he remembers that a civilian came into the room with Donahue, but he does not say that he identified him as the man who fired the shot. Before silence can be properly regarded as an acquiescence in the truth of accusations of guilt it must appear that the accused not only had an opportunity to speak for himself, but was in a position where it would have been fit, suitable and proper for him to speak. The liability of misapprehension or misrecollection or misrepresentation is such that the authorities have uniformly held that this character of evidence should be received with great caution. There was not sufficient foundation laid in this case for the admission of this evidence.

Other errors are assigned and discussed, but the view we take of the case makes it unnecessary to consider them.

The judgments of the Appellate Court and the criminal court of Cook county are reversed and the cause is remanded to the latter for a new trial.

*Reversed and remanded.*