**STATE of Indiana, Appellant-Plaintiff,**

v.

**Richard P. HOLMES,**
**Appellee-Defendant.**

**No. 2–877A304.**

Court of Appeals of Indiana,
Fourth District.

Aug. 27, 1979.

Theodore L. Sendak, Atty. Gen., Jack R. O'Neill, Deputy Atty. Gen., Indianapolis, for appellant-plaintiff.

Samuel H. Power, Frankfort, for appellee-defendant.

CHIPMAN, Judge.

Defendant Holmes was indicted and charged with Entering to Commit a Felony[1] and two counts of Theft.[2] At the close of the State's evidence in a trial to the court, defendant's Motion for Involuntary Dismissal was granted as to each count. Pursuant to Ind.Code 35–1–47–2 the State preserves for review the question of whether the trial court's finding for defendant Holmes was contrary to the evidence and the law.

■■■ Our standard of review on appeal is to determine, considering as true all of the State's evidence, along with reasonable inferences which can be drawn therefrom, whether there was sufficient evidence of probative value to support a finding as to each element of the offenses with which the defendant was charged. The defendant's 41(B)[3] Motion for Involuntary Dismissal did not allow the court to weigh the evidence, notwithstanding the fact the trial judge, in a non-jury trial, is the trier of fact.[4]

---

1. Ind.Code 35–13–4–5. Repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.

2. Ind.Code 35–17–5–3. Repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977.

3. Trial Rule 41(B) is made applicable to a criminal trial by way of Indiana Rules of Procedure, Criminal Rule 21, which provides for the application of the rules of civil procedure to criminal trials when those rules do not conflict with express rules of criminal procedure. *Pinkston v. State*, (1975) Ind.App., 325 N.E.2d 497.

4. *Board of Aviation Commissioners of Clark City v. Schafer*, (1977) Ind.App., 366 N.E.2d 195; *Fielitz v. Allred*, (1977) Ind.App., 364 N.E.2d 786.

■ The evidence shows that during 1968 and 1969, the defendant while on duty as a police officer for the Lafayette City Police Department, stole certain items from three Tippecanoe County business establishments; specifically L. S. Ayres & Company, Von Tobels Industries, Inc. and a Colonel Sanders' Kentucky Fried Chicken restaurant. It appears that each of the thefts was witnessed by at least one of Holmes' fellow officers. At the close of the State's evidence, the defendant moved for involuntary dismissal on the grounds the State had failed to provide sufficient evidence that the defendant actively concealed the three crimes, and therefore, the prosecution of each was barred by the five year statute of limitations for felonies. On appeal, the State argues that contrary to the court's finding, there was sufficient evidence of concealment. We disagree and affirm.

The issue presented for review concerns the application of the statute of limitations which bars the prosecution of a felony five years after its commission,[5] and more specifically Ind.Code 35–1–3–5 which provides:

If any person who has committed an offense, . . . conceals the fact that the offense has been committed, the time of . . . concealment is not to be included in computing the period of limitation.

The State concedes, and the record clearly indicates, the crimes in question were committed more than five years before defendant Holmes' prosecution was commenced. Thus, the State alleged and attempted to prove at trial that Holmes actively concealed the fact the three crimes were committed, and according to IC 35–1–3–5, such concealment tolled the running of the limitation period.

■ IC 35–1–3–5 presents exceptions to the general bar against the prosecution of a felony five years after its commission. Any exception to the limitation period must be construed narrowly and in a light most favorable to the accused. *United States v.*

*Mendoza,* 122 F.Supp. 367 (D.C.Cal.1954); *Mead v. State,* (1958) Fla., 101 So.2d 373; *People v. Ross,* (1927) 325 Ill. 417, 156 N.E. 303.

■ In *Robinson v. State,* (1877) 57 Ind. 113, our Supreme Court stated at page 114:

[T]he words 'conceals the fact of the crime' . . . must be held to mean concealment of the fact that a crime has been committed, unconnected with the fact that the accused was the perpetrator; and further . . . the concealment of the fact of the crime must be the result of some positive act done by the accused, and calculated to prevent discovery of the fact of the offense of which he stands charged.

Thus, that the accused conceals evidence of his own guilt is not concealment of the fact "that the offense has been committed," *State v. Hoke,* (1882) 84 Ind. 137, and the concealment of facts that an offense has been committed must be the result of the defendant's positive acts. *Jones v. State,* (1860) 14 Ind. 120.

We hold there was insufficient evidence that Holmes actively concealed the thefts from the Colonel Sanders' restaurant, L. S. Ayres, and Von Tobels Hardware, therefore, the trial judge properly granted the defendant's motion for dismissal of these three charges.

The State's evidence shows that one morning in November of 1968, between 2:00 and 3:00 a. m., defendant Holmes and fellow officer Jerry Underwood, were on duty riding in the same squad car. Holmes asked Underwood whether he would be interested in some chicken, then drove to a Colonel Sanders' restaurant. There was evidence to support a finding that Holmes entered the restaurant, stole chicken from within, and returned to the squad car. When Underwood refused the chicken and asked Holmes whether it was stolen, Holmes replied, "Just keep your mouth shut. You're not involved. If you don't

---

5. Ind.Code 35–1–3–4. "In all other cases, prosecutions for a misdemeanor must be commenced within (2) years and prosecutions for a felony must be commenced within (5) years after its commission . . . ."

want to get involved, just keep quiet about it."

Since Underwood was a member of the Lafayette Police Department, charged with the duty to report criminal activity, this knowledge started the statutory five year limitation within which a felony prosecution must be commenced. Holmes' comment to Underwood to keep quiet does not rise to the degree of being calculated to prevent the discovery of the offense during the ensuing five years.

As to the thefts from L. S. Ayres and Von Tobels, we also find insufficient evidence of active concealment on the part of defendant Holmes. Officer Sanford Pierson testified that on the night of the Von Tobels theft he observed what he believed to be a police station wagon in front of Von Tobels, with its tailgate down, headlights out, and containing a large load of material which he could not then identify. Approximately a week and a half later Pierson was told what he perhaps already knew—that lumber had been stolen from Von Tobels.

As to the L. S. Ayres theft, the record shows Officer Underwood witnessed the theft but was in no way implicated in the crime. Underwood testified he saw the stolen merchandise in the rear of a squad car which he believed to be Holmes', as it was parked outside the Ayres store. Underwood testified:

Q. Now, when you arrived, what did you do?

A. When I arrived, the first thing I observed was a squad car setting there with some boxes in the back of it. This caught my eye right off the bat. I can't tell you exactly what they were other than it appeared to be on the top of the boxes, maybe, some toys. What kind, I can't recall. It's been a long time ago. The first officer I talked to, or even seen, was Officer Perigo. And as I recall, he was either standing by his car or in the car. I don't remember how it—he was there. I pulled up beside him and asked him, 'What the hell's going on?' And he just kind of give me a blank look and I said, 'Well, I'm leaving.'

Q. And why did you say, 'Well, I'm leaving'?

A. Well, I assumed one or two things: They had found the place unlocked, they were taking stuff back to Headquarters or they was—they were stealing the stuff. One of the two.

Both Pierson and Underwood had knowledge of facts which lead them to believe that theft offenses had been committed. Knowledge of these facts by the officers, who had a duty to report and investigate crime, amounted to a discovery of the fact a crime had been committed. This discovery triggered the running of the statutory period. In *Taylor v. State*, (1931) 44 Ga.App. 64, 160 S.E. 667, the court stated:

The state can acquire knowledge of the crime from one whose special duty it is to report it. Beall, . . . [a police officer] was in no way implicated criminally, or under any legal restraint from reporting the case or testifying therein. It was Beall's duty . . . in an official capacity, to report the offense; and, it being his duty to report it, his knowledge was imputable to the State in legal contemplation; and this knowledge of the state through the years was a bar to the prosecution . . . .

*Taylor*, 160 S.E. at 669.

The State established that Holmes committed the thefts as charged; however, it failed to establish that the statute of limitations had been tolled by the defendants' "acts" of concealment. The ruling of the trial court is, therefore, affirmed.

MILLER, P. J., and YOUNG, J., concur.