**Paul H. UMFLEET,**
**Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 42A01–8912–CR–523.**

Court of Appeals of Indiana,
First District.

July 11, 1990.

Kerry D. Currier, Bicknell, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

STATEMENT OF THE CASE

Defendant-appellant, Paul H. Umfleet (Umfleet), appeals his convictions for two counts of child molesting, Class C felonies.[1]

We reverse.

STATEMENT OF THE FACTS

The facts most favorable to the verdict reveal that Umfleet was charged by Information on May 10, 1989, with two counts of child molesting, Class C felonies. Count I,

---

1. IND.CODE 35–42–4–3(b).

as amended, alleged that during February, 1982, Umfleet performed fondling and touching on M.U., his daughter. Count II alleged that Umfleet performed the same acts on M.U. from June, 1984, through December, 1985.

 Prior to the beginning of trial and at the close of the State's evidence, Umfleet moved to dismiss the charges. Umfleet claimed that prosecution of the charges was barred pursuant to the five year period of limitation set forth in IND. CODE 35-41-4-2. The dispositive issue in the present appeal is whether the trial court erred in denying Umfleet's motions to dismiss.

## DISCUSSION AND DECISION

The statute relevant to this appeal provides:

(a) Except as otherwise provided in this section, a prosecution for an offense is barred unless it is commenced:

(1) within five (5) years after the commission of a Class B, Class C, or Class D felony; ...

....

(d) The period within which a prosecution must be commenced does not include any period in which:

....

(2) the accused person conceals evidence of the offense, and evidence sufficient to charge him with that offense is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence; ...

....

IND.CODE 35-41-4-2. The exceptions delineated in this statute must be construed narrowly and in a light most favorable to the accused. *State v. Holmes* (1979), 181 Ind.App. 634, 393 N.E.2d 242. To fall within the concealment exception, the concealment of a crime must result from a defendant's positive acts. *Id.*

Umfleet claims that with respect to Count I, the Information on its face violates the five year statute of limitations. Umfleet correctly points out that the Infor-

mation was filed in May of 1989, over seven years following the date of the alleged crime. Umfleet argues he is entitled to a dismissal because the State failed to give any justification for its delay in prosecuting the charge. The State responds that Umfleet intimidated M.U. and manipulated her into keeping silent about the alleged molestations. The State cites *Crider v. State* (1988), Ind., 531 N.E.2d 1151, for the proposition that Umfleet's positive acts of intimidation amounted to concealment of the offense and excused the State's delay in prosecuting the charge.

While the record reveals that M.U. did not report the alleged offense until June of 1988, the record does not support the State's assertion that Umfleet engaged in positive acts of intimidation to induce M.U. to keep silent. In *Crider*, as here, the defendant was the molestation victim's father. The Indiana Supreme Court held that the father's positive acts of intimidation tolled the running of the statute of limitations until the victim reported the abuse to authorities. The defendant in that case threatened both the victim and her sister by telling them that he would "put them in the hospital" if they told anyone about the attacks. *Id.* at 1154. He also told the victim's sister, who had also allegedly been abused by the defendant, that she would "never see the light of day" if she did not cooperate with him. *Id.* The threats advanced by the defendant in *Crider*, however, are distinguishable from Umfleet's acts alleged to be intimidating by the State in the present case.

In the present case, Umfleet did not in any manner threaten or intimidate M.U. The trial court, in denying Umfleet's motion to dismiss Count I, made the following remarks:

[M.U.] early, according to the testimony, didn't know or didn't .. had no knowledge that the allegations that she has now made that that activity was wrong. Later it was testified to that she was afraid to cause her father trouble and possibly cause him to lose his job. The defendant continually denied any wrong doing. My notes indicate that on Janu-

ary the 16th 1987 that Barbara Morgan talked to the defendant about the abuse and the defendant, at that particular .. at that point and has always denied the abuse. Mrs. Morgan testified that [M.U.] told her she was afraid to tell about the bathtub incidents and I agree with the State with regard to the letter which .. to which was testified concerning Doctor Jekyll and Mr. Hyde matter. I may be wrong, but I think that that fits under that exception in the statute, number (2) in the statute, that the defendant took some effort to hide the evidence.

*Record* at 809. The matters alluded to by the trial court do not amount to positive acts by Umfleet to conceal the fact that a crime had been committed.

■ The first thing the trial court mentions is the fact that M.U. testified that she did not report the alleged abuse earlier because she did not know that her father's conduct was wrong. There is nothing in the record to indicate that Umfleet told M.U. that the conduct was not wrong or that he told her not to tell anyone. In fact, when M.U. was asked if her father ever told her not to tell, the following exchange took place:

Q. Okay. Now what, if anything, did your father tell you about .. did you think that you weren't supposed to tell what happened in the bathtub when this was happening?

A. Yea, yea, but he didn't, like say, [M.U.] don't tell or anything like that.

Q. He didn't tell you, don't say anything?

A. No, he didn't tell me anything like that, he just didn't say anything.

*Record* at 379–80. There is no exception under the statute to toll the limitation period when the victim does not think that the alleged criminal conduct is a crime. Absent any threatening conduct by the defendant, the victim's ignorance as to the criminal nature of an alleged wrongdoing will not stop the statutory period of limitation from running.

■ Similarly, Umfleet did not threaten or induce M.U. into believing that he would get in trouble if she revealed his actions.

M.U.'s testimony on that subject reveals that:

Q. Okay. Why did you take so long to tell anybody about it, [M.U.]?

A. Well, I was very close to my dad and by just, you know, watching movies and hearing other people talk about it, I thought if I told anyone that he would get in big trouble and have to lose his job and .. you know, he wouldn't be able to pay for food and stuff like that.

Q. Okay. Did that worry you?

A. Yes.

*Record* at 316–17. The testimony reveals that M.U.'s beliefs regarding whether her father would get in trouble for his actions were formed by outside influences. Such outside influences are not positive acts of threats or intimidation meant to induce silence about a crime. This does not meet the concealment exception to the statute of limitations defense.

■ The trial court next notes that Umfleet continually denied any abuse took place. The fact that "the accused conceals evidence of his own guilt is not concealment of the fact 'that the offense has been committed[.]'" *Holmes, supra* 393 N.E.2d at 244 (quoting *State v. Hoke* (1882), 84 Ind. 137). Thus, the fact that Umfleet denied his involvement in the alleged abusive conduct was not a positive act to conceal the fact that an offense was committed.

■ The trial court next noted that Barbara Morgan, the social worker who counselled M.U. prior to the making of the abuse allegations, testified that M.U. told her that she was afraid to report the alleged abuse. Mrs. Morgan, however, did not testify that M.U.'s fear was due to any positive acts of threat or intimidation by Umfleet. Given that M.U. testified that Umfleet never told her not to tell anyone, it is unreasonable to infer that M.U.'s statement that she was scared was attributable to any positive acts of intimidation by Umfleet.

■ In denying Umfleet's motion to dismiss Count I, the trial court mentioned that M.U. was afraid to report the alleged crime

because of the "Doctor Jekyll and Mr. Hyde matter." *Record* at 809. The Jekyll and Hyde matter springs from a conversation between Umfleet and M.U. in which Umfleet told her that sometimes people do things without remembering them, if he ever did anything to hurt her he did not remember doing it, and if he hurt her he was sorry. Nothing about this conversation can reasonably be considered threatening or intimidating. It was nothing more than an attempt by Umfleet to apologize to M.U.

■ Finally, the letter referred to by the trial court was one written by Umfleet to M.U. in which he emphasized the importance of their future father-daughter relationship. M.U. testified at trial that she felt manipulated by this letter. The letter, however, was addressed to M.U.'s caseworker and was accompanied by a letter to the caseworker. In the cover letter, Umfleet asked the caseworker to review the letter to M.U. and decide whether to give it to her. The cover letter further requested that if the caseworker did not give the letter to M.U. that she give Umfleet some constructive advice on how to approach M.U. concerning their father-daughter relationship. Umfleet's actions in this instance were not designed to threaten M.U. Rather, he sought the approval of the caseworker prior to communicating with M.U. No reasonable inference of threat or intimidation can be drawn from his actions.

We have thoroughly reviewed the record and have failed to discover any conduct on Umfleet's part that could be considered a positive act to conceal the fact that a crime had been committed. Umfleet's conduct does not rise to the level of threats and intimidation advanced by the defendant in *Crider, supra.* Thus, the trial court erred in failing to dismiss Count I of the Information.

■ While the dates alleged in Count II appear to fall within the five year period of limitation, the State failed to prove that the alleged crime took place during that period. Count II alleged that the acts of molestation occurred from June 1984, through December 1985. These acts allegedly occurred while Umfleet and M.U. were bathing together. While M.U. could not testify as to her exact age at the time, she was certain that all of the acts took place prior to the family replacing the bathtub. Umfleet persuasively argues that even when viewing the evidence most favorable to the State, there is nothing in the record to support the dates averred in the Information. Several dates were given at trial as to when the tub was replaced. The record reveals that the date most favorable to the State did not fall within either the period alleged in the Information or within the five year statute of limitations contained in IND.CODE 35–41–4–2. Accordingly, the charge had to be dismissed unless the State could prove its delay in bringing the charge was justifiable.

In its brief, the State apparently concedes that the limitations period expired because it did not respond to Umfleet's argument concerning the installation date of the new bathtub. The State instead argues that like Count I, the limitations period was tolled for Count II because of Umfleet's alleged acts of concealment. Based on the same reasons enumerated above for Count I, we find that Umfleet did not engage in positive acts of intimidation or threats so as to conceal the fact that a crime had been committed. The trial court also erred in failing to dismiss Count II.[2]

The convictions are reversed and Umfleet discharged.

RATLIFF, C.J., and SHIELDS, P.J., concur.

---

**2.** When making its remarks concerning the motion to dismiss Count II, the trial court implied that because M.U. was still under 12 years old at the time of trial and the age limit contained in IND.CODE 35–42–4–3(b) is also 12, that time was not of the essence in Count II. The age of the child at the time of trial or otherwise has no effect on the running of the period of limitation.