**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RONALD K. SMITH**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DUANE R. TACKETT, | ) | |
| | ) | |
| Appellant- Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A05-1101-CR-00007 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee- Plaintiff, | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne Vorhees, Judge
Cause No. 18C01-0809-FB-41

**January 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

<u>Case Summary and Issues</u>

Over a period of more than ten years, Duane Tackett engaged in unlawful sexual acts with A.J., his mentally challenged step-daughter. Following a jury trial, Tackett appeals his convictions of rape, sexual misconduct with a minor, and criminal deviate conduct, all Class B felonies, and child solicitation, a Class D felony. He raises six issues for our review, which we restate as: 1) whether sufficient evidence was presented that his offenses were committed within the statute of limitations, 2) whether the State satisfied its burden to show that A.J. need not testify in Tackett's physical presence, 3) whether the trial court erred in permitting three witnesses to repeat prior consistent statements by A.J., 4) whether the trial court erred in denying Tackett's request to re-cross-examine A.J., 5) whether his convictions violate double jeopardy principles, and 6) whether his sixty-year sentence is inappropriate.

We conclude that the State presented sufficient evidence that Tackett concealed evidence of the offense of sexual misconduct with a minor, which brings this offense within the statute of limitations. The State also presented sufficient evidence that Tackett committed the other offenses within the statute of limitations. We also conclude that the State satisfied its burden to show that A.J. need not testify in Tackett's physical presence, admission into evidence of prior consistent statements by A.J. was not improper, denial of Tackett's request to re-cross-examine A.J. was not improper, and Tackett's convictions do not violate double jeopardy principles. Finally, we conclude that his sentence is not inappropriate. Accordingly, we affirm.

Facts and Procedural History

A.J. was born on July 24, 1980, and suffers from mental retardation, seizure disorder, cerebral palsy, and autism. During the investigation and trial, when A.J. was in her late twenties, her IQ was 57 and she had the mental capacity of a seven- to nine-year-old. Tackett married A.J.'s mother, Patricia, in 1983. As A.J.'s step-father, Tackett began touching A.J. in a sexual manner while A.J. was in elementary school, and continued while A.J. was in middle school and, after the three-person family moved to Kentucky, while A.J. was in high school.

Specifically, Tackett touched A.J.'s breasts and vagina with his mouth, and placed his penis inside A.J.'s vagina. He touched A.J.'s rear-end as well, and had her touch his penis with her hands and mouth. On at least one occasion, Tackett attempted to place his penis inside A.J.'s anus, but Patricia stopped him because A.J. was in "too much" pain.[1] Transcript at 327. Tackett and Patricia told A.J. that "what goes on in the bedroom stays in the bedroom." Id. at 74 (in question by prosecutor with agreement by A.J.); see id. at 315 (in question by prosecutor with agreement by Patricia). Tackett's regular sexual relations with A.J. continued until his arrest in mid-2008.

Tackett, Patricia, and A.J. moved back to Indiana from Kentucky in March 2008, when A.J. was twenty-seven years old. Soon after their return, Sylvia Norris, A.J.'s aunt who lived in Indiana, noticed A.J. wore a ring and asked A.J. why she wore it on her left ring finger. A.J. did not respond. Norris then noticed A.J. also wore a birth control

---

[1] It appears from the record that Patricia was prosecuted separately from Tackett. Patricia is not a party to this appeal.

patch.  In early May 2008, A.J. told Norris and another aunt that Tackett forced her to pull her pants down, and hit her when she did not do so.

Norris contacted the police and on May 13, 2008, the State charged Tackett with rape, sexual misconduct with a minor, and criminal deviate conduct, all Class B felonies, and child solicitation, a Class D felony.  A jury found Tackett guilty as charged, and the trial court entered a judgment of conviction as to all four offenses.  Following a hearing, the trial court sentenced Tackett to consecutive twenty-year sentences for each Class B felony, to be served concurrent with a three-year sentence for child solicitation, for an aggregate sentence of sixty years.  Tackett now appeals.  Additional facts will be supplied as appropriate.

<u>Discussion and Decision</u>[2]

I.  Statute of Limitations

Tackett's threshold statute of limitations argument is based on Indiana Code section 35-41-4-2.  Section 35-41-4-2 provides:

> (a) Except as otherwise provided in this section, a prosecution for an offense is barred unless it is commenced:
> (1) within five (5) years after the commission of the offense, in the case of a Class B, Class C, or Class D felony; . . .
> ***
> (h) The period within which a prosecution must be commenced does not include any period in which:
> (1) the accused person is not usually and publicly resident in Indiana or so conceals himself or herself that process cannot be served;
> (2) the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the

---

[2] Tackett filed a Motion for Finding of Untimely Filing of Brief by the State.  Therein he requests that we enter a finding that the State failed to timely file its appellee's brief, and as a result we must apply the prima facie error standard of review.  We decline to enter such finding and abide by such standard for two reasons.  First, Indiana Appellate Rule 45(D), which grants us the authority to reverse the trial court upon appellant's showing of prima facie error, is discretionary authority, so we are not required to reverse the trial court's judgment.  Second, Tackett was not prejudiced at all by the one-day tardiness of the State's brief.  Accordingly, we hereby deny Tackett's Motion for Finding of Untimely Filing of Brief by the State.

prosecuting authority and could not have been discovered by that authority by exercise of due diligence; . . . .

The State contends that Tackett concealed evidence of his offenses, thereby tolling the statute of limitations, and that prosecution commenced within the required statutory period upon authorities' discovery of sufficient evidence to file charges.

In addressing this issue, we review the record to determine if sufficient evidence was presented to support the State's position and sustain Tackett's convictions.  See Hobson v. State, 495 N.E.2d 741, 745 (Ind. Ct. App. 1986).  While sufficiency claims are reviewed for a general abuse of discretion and therefore great deference is given to the trial court's discretionary decisions, we review statute of limitations issues somewhat differently.  See Thakkar v. State, 613 N.E.2d 453, 457 (Ind. Ct. App. 1993), disapproved of on other grounds by Sloan v. State, 947 N.E.2d 917, 921 n.7 (Ind. 2011).  Any exception to the criminal statute of limitations, including concealment, must be construed narrowly and in a light most favorable to the accused.  Id.

### A.  Concealment

Indiana appellate courts have historically defined concealment as an affirmative or positive act by the accused that was calculated to prevent discovery of the fact of the commission of the offense.  See Jones v. State, 14 Ind. 120, 121 (1860).[3]  The Jones interpretation, particularly as to an affirmative or positive act, was repeated in Robinson v. State, 57 Ind. 113, 114 (1877), and again over the years by Indiana appellate courts.  See, e.g., State v. Chrzan, 693 N.E.2d 566, 567 (Ind. Ct. App. 1998) (quoting Robinson).

---

[3] This decision by the early Indiana Supreme Court interpreted a former version of the statute, which refers to one who "conceals the fact of the crime."  Id.

At the recent supreme court oral argument in Sloan, defense counsel conceded that the defendant intimidated the victim and that intimidation constitutes concealment. 947 N.E.2d at 921 n.6. As a result, our supreme court simply referred to the defendant's conduct in passing as "affirmative acts to conceal the abuse," before concluding concealment occurred. Id. at 921. The supreme court noted that a recent amendment to the statute might have broadened the category of evidence that, if concealed, would toll the limitations period, but left that question for another day. Id. at 922 n.8. Similarly, interpretation of the new language is not at issue in this case. See Ind. Code § 35-41-4-2(h)(2) (the new statutory language is "conceals evidence of the offense"). Here, the issue as to concealment is whether Tackett's alleged positive or affirmative acts constitute concealment of evidence of his offenses.

The State contends Tackett concealed evidence of his offenses in three ways. First, Tackett and Patricia "continually," tr. at 315, told A.J. that "what goes on in the bedroom stays in the bedroom." Id. at 74. Second, Tackett maintained a coercive influence over A.J., particularly because of her mental challenges. Third, Tackett and Patricia moved with A.J. from Indiana to Kentucky and lived there for several years before returning to Indiana.

Tackett and Patricia's repeated statement to A.J. that she should not tell others about what occurs in their bedroom is not explicitly threatening. But the State did present evidence that Tackett threatened to hit A.J. if she did not comply with his sexual requests. And while there is no evidence that he explicitly threatened to hit A.J. if she told others about his sexual misconduct, given A.J.'s mental development and the nature of the

6

statement and the threat – both of which occurred during the acts – the statement becomes threatening.

Admittedly, concealment does not explicitly require a threat. As mentioned, our case law generally requires only an affirmative or positive act. But the affirmative or positive acts that were the subject of concealment cases are serious threats.[4] For example, in Crider v. State, 531 N.E.2d 1151, 1154 (Ind. 1988), which directly addressed whether concealment occurred, the victim of child molestation and her sister testified that they did not tell anyone of their father's repeated attacks because "he threatened to 'put them in the hospital' if they told anyone," and that the victim's sister would "never see the light of day" if she did not cooperate with him. Id. at 1154 (citations omitted); see Sloan, 947 N.E.2d at 919-20 (defendant told victim at least once that she would go to jail if she disclosed molestations and appellate counsel conceded that defendant's acts constituted intimidation).

Far less than the explicitly threatening concealment in Crider, Tackett's statement to A.J. is closer to the statement at issue in State v. Holmes, 181 Ind. App. 634, 393 N.E.2d 242 (1979). In Holmes, an officer stole some chicken from a Colonel Sanders' restaurant and told a fellow officer the following: "Just keep your mouth shut. You're not involved. If you don't want to get involved, just keep quiet about it." Id. at 638, 393 N.E.2d at 244-45. Our court concluded that this "comment . . . to keep quiet does not rise to the degree of being calculated to prevent the discovery of the offense." Id. at 638, 393 N.E.2d at 245; see also Umfleet v. State, 556 N.E.2d 339, 341 (Ind. Ct. App. 1990)

---

[4] The nature of a threat varies based on the target of the threat and the severity of the threatened harm. Hamilton v. State, 955 N.E.2d 723, 728 (Ind. Oct. 19, 2011) (discussing threats in the context of sentencing).

7

(finding no concealment where defendant "did not in any manner threaten or intimidate" the victim, the defendant did not tell the victim not to tell anyone, and the victim did not believe the conduct was a criminal offense), disapproved of on other grounds by Sloan, 947 N.E.2d at 921 n.7.[5]

If Tackett's bland statement considered in isolation constitutes concealment, virtually every statement would constitute concealment. We do not here amend the definition of concealment to require an explicit threat. We simply clarify that not every affirmative or positive act constitutes concealment to toll the statute of limitations. This is consistent with Holmes and Umfleet.

A.J.'s mental challenges properly become the focus of this discussion as the State next contends Tackett concealed evidence of his offenses by exerting a coercive influence over A.J., and refers us to Thakkar. In Thakkar, we acknowledged that "courts specifically mention the particular vulnerability of child molest victims and the continuing coercive influence the defendant, usually a parent or other family member, has over the child to prevent the child from disclosing the crime." 613 N.E.2d at 457. In Thakkar, we found a coercive influence based upon threatening phone calls. We identified a distinction "between a situation where the victim is a child under the authoritative day-to-day continuing coercive influence of a defendant and one in which the victim is neither a child nor under the authoritative day-to-day continuing coercive

---

[5] In Umfleet, our court held that a defendant's silence and a victim's ignorance as to the criminal nature of the alleged conduct does not constitute concealment. 556 N.E.2d at 342-43. There, the defendant did not even tell the victim not to say anything to others. We stated "[a]bsent any threatening conduct by the defendant, the victim's ignorance as to the criminal nature of an alleged wrongdoing will not stop the statutory period of limitation from running." Id. at 342. Our court also relied heavily on the facts of Crider in applying the positive/affirmative acts requirement for concealment. See id. at 343 ("We have thoroughly reviewed the record and have failed to discover any conduct on Umfleet's part that could be considered a positive act to conceal the fact that a crime had been committed. Umfleet's conduct does not rise to the level of threats and intimidation advanced by the defendant in Crider . . . .").

influence of a defendant." Id. at 457-58. Accordingly, when a child is under the "authoritative day-to-day continuing coercive influence of a defendant," concealment occurs and a statute of limitations is tolled. Id.

Here, the evidence shows that because A.J. is mentally challenged, she relied on Tackett, Patricia, and others for assistance in almost every aspect of her life. The evidence also shows that A.J. viewed the ring that she wore on her left ring finger to be a symbol of her marriage to Tackett, which for some period of time in A.J.'s mind justified her sexual relationship with Tackett. This evidence suggests that A.J. was under the authoritative day-to-day coercive influence of Tackett.

In other words, Tackett's threats to harm A.J. if she did not comply with his sexual requests coupled with A.J.'s mental challenges constitute an authoritative and coercive relationship between Tackett and A.J. The State satisfied its burden to prove that Tackett concealed evidence of his offenses to bring the charges within the statute of limitations.

### B. Sexual Misconduct with a Minor

The offense of sexual misconduct with a minor involves a person at least eighteen years old performing or submitting to sexual intercourse or deviate sexual conduct with a child at least fourteen years old but less than sixteen years old. Ind. Code § 35-42-4-9. As a result, without an exception to the statute of limitations, the State was required to file these charges, at the latest, before A.J. turned twenty-one years old. As we concluded above, the State established that Tackett concealed evidence of this offense. This concealment brings his offense within the statute of limitations and his appeal proceeds

beyond the threshold statute of limitations issue. For the reasons stated below, Tackett's other convictions proceed beyond the statute of limitations issue as well.

### C. Rape, Criminal Deviate Conduct, and Child Solicitation

The offenses of rape and criminal deviate conduct do not have an age requirement for the victim. See Ind. Code § 35-42-4-1 (rape); Ind. Code § 35-42-4-2 (criminal deviate conduct). Therefore, even without evidence of concealment, Tackett's convictions for rape and criminal deviate conduct may be sustained if evidence was presented that he committed those offenses "at any date within the statute of limitations preceding the filing of the affidavit or indictment." Coomer v. State, 575 N.E.2d 683, 686 (Ind. Ct. App. 1991). Accordingly, despite the dates in the State's charges, the State was required to present evidence that Tackett committed these offenses within five years before May 13, 2008, the date the State filed charges against Tackett for rape and criminal deviate conduct "at diverse times between July 24, 1994 and July 24, 2004." Appellant's App. at 20, 22. The State presented evidence that Tackett engaged in rape and criminal deviate conduct "[m]any times," but no dates. Tr. at 91. A.J. testified that Tackett touched her inappropriately sometime after the three moved from Kentucky back to Indiana in early 2008, which is sufficient, albeit barely, to overcome Tackett's statute of limitations challenge to these convictions.

Tackett's conviction for child solicitation also proceeds beyond the statute of limitations regardless of evidence of concealment because Indiana Code section 35-41-4-2(e)(3) allows prosecution for this offence to commence at any time before the victim turns thirty-one years old, and A.J. was below that age when prosecution began.

## II.  Video Testimony of A.J.

Before trial the State moved for A.J. to be considered a protected person and for her testimony, including cross-examination, to be taken outside Tackett's physical presence.  On this motion the trial court held a hearing, in which it heard the testimonies of Marilyn Nathan, a licensed psychologist, and Courtney Sutliff, a behavioral specialist who holds a master's degree in social work and a license for clinical social work.  Following this hearing, the trial court granted the State's motion and then held another hearing, which was videotaped and in which A.J. testified and was cross-examined from a location other than the courtroom and outside Tackett's physical presence.  This videotape was played for the jury at trial.

Tackett argues that the State failed to satisfy its burden to show that A.J. did not need to testify in Tackett's physical presence.  Specifically, Tackett contends Nathan's testimony improperly contained inadmissible hearsay statements by others, Nathan should not have been permitted to testify because she had no personal contact with A.J., and, without other evidence in support of this motion, the State's motion should have been denied.  Tackett also argues that Nathan's testimony did not rely upon opinions of experts.  In support of his arguments, Tackett refers us to Miller v. State, 575 N.E.2d 272 (Ind. 1991), and Schaefer v. State, 750 N.E.2d 787 (Ind. Ct. App. 2001).

Indiana Code sections 35-37-4-6 and -8 address evidence and protection of certain witnesses.  The two sections appear to overlap in several areas, but section 35-37-4-8 is more relevant here as it prescribes when a court may order that the testimony of a protected person, as defined in section 35-37-4-6, be conducted outside the physical

11

presence of the accused, and that such testimony may be videotaped and played at trial.

Specifically, section 35-37-4-8 provides:

> (e) The court may not make an order under subsection (c) [(regarding a protected person's testimony outside the physical presence of the accused)] or (d) [(regarding videotaping such testimony and playing the videotape at trial)] unless:
> (1) the testimony to be taken is the testimony of a protected person who:
> \*\*\*
> (B) is found by the court to be a protected person who should be permitted to testify outside the courtroom because:
> (i) the court finds from the testimony of a psychiatrist, physician, or psychologist and any other evidence that the protected person's testifying in the physical presence of the defendant would cause the protected person to suffer serious emotional harm and the court finds that the protected person could not reasonably communicate in the physical presence of the defendant to the trier of fact;
> (ii) . . .; or
> (iii) evidence has been introduced concerning the effect of the protected person's testifying in the physical presence of the defendant, and the court finds that it is more likely than not that the protected person's testifying in the physical presence of the defendant creates a substantial likelihood of emotional or mental harm to the protected person; . . . .

Tackett's case is significantly distinguishable from Miller, 575 N.E.2d 272. In Miller, a pediatrician who treated the child victim of sexual molestation testified as to results of medical tests of the defendant's girlfriend, tests which another doctor conducted and relayed the results of to the pediatrician over the telephone. There the pediatrician "simply acted as a conduit for the statements" of the other doctor and "was unable to answer even the simplest of questions concerning [the] tests" on cross-examination. Id. at 274. The supreme court deemed improper the pediatrician's testimony regarding results of the other doctor's tests.

Our supreme court also explained:

> This Court has recognized that some experts customarily gather information from a variety of other experts and authoritative sources and

12

rely upon it in reaching their opinions. When an expert witness's own independent opinion is arrived at in this manner and it is introduced into evidence and the expert witness is subject to cross-examination, that part of the substrata of information which aided in the formation of the opinion, though hearsay in nature and though not falling within any hearsay exception, may nevertheless be admissible for use by the trier of fact in judging the weight of the opinion. Under the Federal Rules of Evidence, an expert witness is likewise permitted to base an opinion on facts or data that are not admissible in evidence if they are of a type reasonably relied upon by experts in the field.

Id. (citations omitted).

Nathan had no personal contact with A.J. and gained all of her information about A.J. from conversations with, reports completed by, and tests administered by a clinician, Jennifer Johnson. But Nathan was not merely a conduit for statements by Johnson. Unlike the pediatrician in Miller, Nathan was a psychologist trained to compile assessments by clinicians and craft a recommendation to courts. Nathan relied on tests taken by Johnson, who was trained to take those tests and report to a psychologist.

Most significantly and the determining fact here, Nathan was not unable to provide meaningful answers to Tackett's questions about the tests conducted by Johnson. Tackett's cross-examination, objection to Nathan's testimony, and appellate challenge focus on Nathan's lack of personal contact with A.J. Personal contact is mostly irrelevant. Rather, the primary concern is whether the expert can adequately answer cross-examination questions regarding the underlying hearsay information. See id. Tackett did not challenge the accuracy of the tests by Johnson – which might have required Johnson's availability for cross-examination. Tackett's questions on cross-examination challenged Nathan's interpretation of Johnson's tests, and whether Johnson's tests led to Nathan's conclusions. To the extent Tackett did challenge the

13

accuracy of Johnson's tests, Nathan was able to provide intelligent responses such that the jury may weigh the evidence.

Tackett's case is also significantly distinguishable from Shaefer, 750 N.E.2d 787. In Shaefer, the defendant argued that medical reports containing a doctor's opinions did not satisfy the evidentiary rule regarding an hearsay exception for statements made for purposes of medical diagnosis or treatment and describing medical history. The defendant was unable to cross-examine the doctor whose opinion was included in the records. Our court stated: "hospital records may not be excluded as hearsay simply because they include opinions or diagnoses. But, and it is a substantial but, for medical opinions and diagnoses to be admitted into evidence, they must meet the requirements for expert opinions set forth in Evid. R. 702." Id. at 793 (citation omitted).

Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Nathan testified regarding specialized knowledge that assisted the trial court in determining the degree to which A.J. may be emotionally and psychologically harmed by testifying in the physical presence of Tackett. The trial court expressed satisfaction with the scientific principles upon which Nathan relied. This constitutes an adequate foundation for Nathan's testimony as an expert. We acknowledge that Shaefer concerned whether the underlying opinion in the records were made by an expert. We have no need to determine whether Johnson qualifies as an expert because her test results were not

14

admitted upon her own expertise, they were admitted through Nathan, as Nathan was permitted to rely upon hearsay evidence in preparing her own expert opinion.

In sum, Nathan qualifies as an expert and is therefore permitted to rely on hearsay evidence. Nathan did so, in relying upon verbal comments, written reports, and results of tests conducted by Johnson. This is consistent with the normal practice in their professions and in the psychological treatment of victims and assessing their ability to testify at trial. Tackett's main concern was not the testing process or Johnson's ability to test properly, but Nathan's interpretation of the test results and eventual conclusion. Tackett cross-examined Nathan and Nathan was able to answer intelligently regarding the testing process. Tackett was afforded his right to cross-examine Nathan, and the trial court followed the statutory framework in determining that A.J. need not testify in the physical presence of Tackett. The State satisfied its burden to show that A.J. need not testify in Tackett's physical presence, and the trial court did not err in granting the State's motion for the same.

## III. Hearsay Testimony

Tackett next argues that the trial court erred in permitting Linda Cook, Steven Blevins, and Sylvia Norris to repeat statements that A.J. made to them regarding Tackett because he believes these statements to be inadmissible hearsay. Indiana Evidence Rule 801(d)(1) provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose . . . ." In some instances the admission of

15

impermissible hearsay evidence in violation of this rule is harmless error. <u>Willis v. State</u>, 776 N.E.2d 965, 968 (Ind. Ct. App. 2002). Reversal is only appropriate where the improper admission of evidence caused prejudice to the appellant's substantial rights. <u>Craig v. State</u>, 630 N.E.2d 207, 211 (Ind. 1994). This determination requires an assessment of the probable impact of that evidence upon the jury. <u>Id.</u>

As mentioned in our discussion of issue II above, A.J. testified and Tackett cross-examined A.J. at a videotaped hearing before trial. At trial, following the testimony of Cook, Blevins, Norris, and others, the video was played for the jury. At the hearing in which A.J. testified, at least one of Tackett's questions on cross-examination suggested that A.J. recently fabricated her allegations of Tackett's sexual acts because her aunt told her to do so.[6] Tackett denies this was an allegation of recent fabrication, but the State

---

[6] We have reproduced the relevant portions of the transcript below:

Q. Before you told the people that you talked to back in May of '08, did you ever tell anybody else that any of these things happened?
A. Yeah.
Q. And who --
A. My Aunt Sylvie.
Q. And she's the one that told you what to say?
A. Yeah.
\*\*\*
Q. Okay. You said a little bit ago that your Aunt Sylvie had told you what to say?
A. She told me to tell the truth.
Q. Okay. Alright. Did she tell you why she wanted you to say these things?
A. (Inaudible). Yeah. That's her brother, so.
Q. And that's why she wanted you to say these things?
A. (Witness nods yes).
Q. Did someone tell you to say that these things had happened whenever you were going to Grissom [(school)]?
A. Yeah.
Q. Okay. Who told you to say that?
A. (Inaudible).
Q. Okay. Did someone tell you to say that these things had happened while you were going to Wilson [(school)]?
A. No.
Q. Did anyone tell you to say that anything had happened to you or these things had happened while you were going to Southside [(school)]?
A. No.

Tr. at 87, 89-90.

contends Tackett's cross-examination was at least an implied charge of recent fabrication and therefore the State was entitled to rehabilitate A.J. by introducing testimony by others about A.J.'s prior consistent statements to them.

Upon review of the record we agree that Tackett did not directly allege that A.J. recently fabricated her accusations. Tackett's questions as to whether A.J. previously told others about the sexual acts were prudent and important because if A.J. had disclosed the abuse earlier, the statute of limitations may have precluded prosecution. And in a manner comparable to the State's attempt to show that A.J. is vulnerable to others' attempt to influence her testimony, Tackett's cross-examination explores whether anyone did so in a manner prejudicial to Tackett. We also recognize that due to A.J.'s mental challenges, defense counsel's ability to depose A.J. was likely limited, if the opportunity arose at all, so the scope of cross-examination is naturally a bit more explorative than it might have been otherwise.

Nevertheless, the nature of these questions warrants their treatment as implied charges of recent fabrication.[7] Our supreme court has quoted with agreement the following conclusion by the Seventh Circuit Court of Appeals: "[t]he fact that . . . counsel may not have intended to imply that [the witness's] story was fabricated . . . is irrelevant if that inference fairly arises from the line of questioning he pursued." Horan v. State, 682 N.E.2d 502, 512 (Ind. 1997) (quoting U.S. v. Baron, 602 F.2d 1248, 1253 (7th Cir. 1979)). A fact-finder may reasonably infer from Tackett's line of questioning that he alleged A.J. recently fabricated her allegations. Further, Tackett does not argue that the

---

[7] For the above-stated reasons and others, we do not intend to discourage defense counsel from inquiring into these important areas on cross-examination in future similar cases, nor do we intend to suggest that defense counsel in this case acted unethically or improperly.

statements did not meet all other requirements under Evidence Rule 801(d)(1). "Once an implied charge of recent fabrication is made, the adversary is entitled to present a prior consistent testimony as substantive evidence." Id.

A.J.'s prior statements to Cook, Blevins, and Norris were admissible because A.J.'s testimony at the pre-trial hearing may be considered "at trial," she was cross-examined concerning those statements, the prior statements were consistent with A.J.'s testimony, and they were offered to rebut an implied charge of A.J.'s recent fabrication. See Ind. Evid. R. 801(d)(1). Admittedly, prior consistent statements are usually admitted at trial after the fact-finder hears the implied charge of recent fabrication; whereas here, A.J.'s prior consistent statements were presented to the jury before A.J.'s videotape testimony. But because it was evident to the State that A.J.'s videotaped testimony would be played in full, and in reality Tackett had already impliedly charged A.J. with recent fabrication, a charge which was eventually presented to the jury, the trial court did not prejudice Tackett's substantial rights in allowing Cook, Blevins, and Norris to testify regarding A.J.'s prior consistent statements.

## IV. Cross-Examination

Tackett next argues the trial court erred in denying his request to re-cross-examine A.J. regarding the statements she made to Blevins, Cook, and Norris. He contends the trial court's denial of this request "violated the holding in Modesitt [v. State, 578 N.E.2d 649 (Ind. 1991)], that a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross-examination concerning the statement." Brief of Defendant-Appellant Duane R. Tackett at 8. But Modesitt concerns the admissibility of a prior statement, not whether a defendant must be afforded the

18

opportunity to re-cross-examine a witness. Tackett might point to his lack of an opportunity to re-cross-examine A.J. as further support for his argument in issue III that A.J.'s prior statements to Blevins, Cook, and Norris should not have been admitted. But this is simply re-characterizing issue III, which we addressed above and decided in favor of the State.

Trial judges have the duty to manage trials and the discretion to make determinations involving the examination of witnesses. Heald v. State, 492 N.E.2d 671, 678 (Ind. 1986). To show the trial court abused its discretion in this manner, Tackett is required to demonstrate actual prejudice. Id. As explained above, we consider A.J.'s testimony to be "at trial," and have concluded that she was cross-examined regarding the statements she made prior to the State filing charges against Tackett. Tackett fails to demonstrate actual prejudice.

## V. Double Jeopardy

Tackett next contends that his convictions of rape, sexual misconduct with a minor, and child solicitation violate the constitutional prohibition against double jeopardy under the actual evidence test. See Richardson v. State, 717 N.E.2d 32, 53 (Ind. 1999).

Our supreme court's decision in Richardson explains the actual evidence test for determining whether two convictions constitute double jeopardy:

> Under this inquiry the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

Id. (footnote omitted).

Courts must identify the essential elements of each of the challenged offenses and evaluate the evidence from the jury's perspective. Lee v. State, 892 N.E.2d 1231, 1234 (Ind. 2008). "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." Id. A "'reasonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." Id. at 1236.

The charging information for rape states, in part: "at diverse times between July 24, 1994 and July 24, 2004 . . . Tackett did knowingly have sexual intercourse with a person of the opposite sex, to-wit: [A.J.]; when such person was so mentally disabled or deficient that consent to said intercourse could not be given . . . ." Appellant's Appendix at 20. The charging information for sexual misconduct with a minor states, in part: "at diverse times between July 24, 1994 and July 24, 1996 . . . Tackett, . . . did intentionally perform or submit to sexual intercourse or deviate sexual conduct with [A.J.], a child at least fourteen (14) years of age but less than sixteen (16) years of age . . . ." Id. at 21. The charging information for child solicitation states, in part: "between July 24, 1994 and July 24, 1996 . . . Tackett, being at least twenty-one years of age, . . . did knowingly or intentionally solicit [A.J.], a child of at least fourteen years of age but less than sixteen years of age . . . to engage in sexual intercourse . . . ." Id. at 23.

Although these charges partially overlap regarding the two-year period of July 24, 1994 to July 24, 1996, they largely allege different acts – sexual intercourse while A.J. was between the ages of fourteen and twenty-four, sexual intercourse or deviate sexual conduct while A.J. was between the ages of fourteen and sixteen, and solicitation of

20

sexual intercourse.  Evidence was presented that Tackett both solicited A.J. to engage in sexual intercourse and, in fact, did knowingly or intentionally engage in sexual intercourse with A.J.  Evidence was also presented that Tackett did so numerous times over an extended period at least as early as July 1994, and as late as early-2008.  In our review of the evidence, there is no reasonable possibility that the jury relied upon the same evidentiary facts to find Tackett guilty of rape, sexual misconduct with a minor, and child solicitation.[8]

## VI.  Inappropriate Sentence

Tackett's final challenge is that his sixty-year sentence is inappropriate in light of the nature of his offenses and character.  This court has authority to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).  In making this determination, we may look to any factors appearing in the record.  Roney v. State, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007), trans. denied.  Nevertheless, the defendant bears the burden to persuade this court that his or her sentence is inappropriate.  Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).  "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others,

---

[8] Tackett also briefly alleges in this section of his appellate brief that the trial court should not have imposed consecutive sentences.  Determining whether sentences should be served consecutively or concurrently is generally a matter within the trial court's discretion.  Ind. Code § 35-50-1-2; Owens v. State, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009).  Tackett does not argue on appeal that the trial court abused its discretion in sentencing him. To the extent he intends to do so in this single statement in the double jeopardy section of his brief, which is relatively unrelated to sentencing, he fails to do so according to appellate rules.  See Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning.  Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.").  In any event, Tackett fails in this single statement to persuade us that the trial court abused its discretion in ordering that he serve consecutive sentences.

and myriad other factors that come to light in a given case." Cardwell v. State, 895 N.E.2d 1219, 1224 (Ind. 2008).

For each Class B felony conviction, one may be imprisoned for six to twenty years, and the advisory sentence is ten years. Ind. Code § 35-50-2-5. The sentencing range for a Class D felony conviction is six months to three years, with an advisory sentence of one and one-half years. Ind. Code § 35-50-2-7(a).

Tackett's conduct is among the worst of the worst: he repeatedly solicited, threatened, and raped his mentally challenged step-daughter over an extended period of more than ten years – perhaps up to twenty-five years. As part of this scheme, he involved A.J.'s mother and persuaded A.J. that she was his "wife," so that A.J. would not think their sexual acts were improper. The revolting nature of these offenses does not persuade us that Tackett's sentence is inappropriate.

Tackett contends his good character warrants a lesser sentence because there was no uncharged sexual misconduct in this case and he has no criminal history. However, the record shows that Tackett engaged in sexual misconduct with A.J. repeatedly for years. In that sense, despite his history of employment, support from family and friends, and lack of prior convictions, he has not been a law-abiding citizen and his character is significantly tarnished.

Considering the nature of Tackett's offenses and his character, his aggregate sixty-year sentence is not inappropriate.

## Conclusion

The State presented sufficient evidence that Tackett concealed evidence of the offense of sexual misconduct with a minor to toll the statute of limitations. Tackett's

22

other convictions also proceed beyond the statute of limitations threshold issue. We conclude that the State satisfied its burden to show that A.J. need not testify in Tackett's physical presence, admission into evidence of prior consistent statements by A.J. was not improper, denial of Tackett's request to re-cross-examine A.J. was not improper, and Tackett's convictions do not violate double jeopardy principles. Finally, we conclude that his sentence is not inappropriate. Accordingly, we affirm.

Affirmed.

BARNES, J., and BRADFORD, J., concur.

23